# FARMERS BANK OF MARYLAND *vs.* BENJAMIN M. HEIGHE and others.

A judgment recovered in one county court is not a lien upon land situated in a different county when such judgment has not been transferred to the county where the land lies, according to the provisions of the acts of 1794, ch. 54, sec. 9, and 1795, ch. 23.

APPEALS from the Court of Chancery.

On the 1st of February 1843, David Steuart, Jr., and wife, residents of Baltimore city, mortgaged lands lying in Anne Arundel county to Handel M. Hayden, to secure the sum of $1500, owing to the latter. On the 14th of March 1848, Hayden filed his bill to foreclose this mortgage, and there being no

dispute, the defendants consented to a decree for a sale, which was passed on the 18th of the same month. The trustee made the sale on the 22nd of June following, but did not report the same until the 2nd of October 1848, when, on the same day, by consent of parties, it was finally ratified by the chancellor.

Previous to the ratification, viz., on the 11th of September 1848, the Farmers Bank recovered judgments against Steuart, in Baltimore county court, with stay of execution till January 1849, upon his acceptances, which had matured between the 26th of February and the 6th of May 1848, amounting to $2147.25. The land sold for $4351.20, and the purchaser, according to the terms of the decree, paid one-third in cash and gave his two bonds, with sureties, for the residue, payable, respectively, with interest, in one and two years from the day of sale.

On the 11th of October 1848, the auditor filed his report and account, in which he applied the net proceeds of sale to the payment of the mortgage debt, and assigned the balance, amounting to $2521.73, to Steuart, the mortgagor; which report and account was, on the same day, ratified and confirmed, and the trustee, as usual, directed to pay the money accordingly, with a due proportion of interest. On the 11th of February 1849, *fi. fas.* were issued on the bank's judgments, returnable to the following May term, when they were returned *nulla bona* by the sheriff of Baltimore county. Steuart petitioned for the benefit of the insolvent laws, on the 7th of February 1849, and received his final discharge, on the 2nd of June following.

On the 16th of March and 25th of June 1849, the bank filed petitions in the cause, claiming, by virtue of its judgments, a lien on the surplus proceeds of sale appropriated to Steuart, and seeking to have the same applied thereto. The defence taken by the appellee, Heighe, was, that in April 1848, Steuart had given him an order on the trustee for $1500, in payment of which the trustee passed to him one of the purchaser's bonds for $1450, by endorsement, which was received as cash, and paid the residue in money; that this

assignment was *bona fide* and for a valuable consideration, and that the bank had no lien on the fund. The answer of Steuart and the trustee was to the same effect. The purchaser, upon the order of the chancellor, paid the money into court, and the cause being afterwards submitted on petition and answer, the chancellor, (JOHNSON,) ordered the amount of the bond to be paid to Heighe, from which order the bank appealed.

The residue of the surplus had been assigned by Steuart to the other appellees, Freeland, and Hall and Welsh, on the 14th of October 1848, and upon their petition the chancellor ordered the same to be paid to them, from which order also the bank appealed. The opinion of the chancellor in these cases, to the effect that the judgments recovered by the bank in Baltimore county, were not liens upon the land in Anne Arundel county, not having been transferred to said county, as required by the acts of 1794, ch. 54, sec. 9, and 1795, ch. 23, is reported in 1 *Maryland Chancery Decisions,* 459.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Oliver Miller* for the appellant, contended:

1st. The proceeds of the sale are to be regarded as real estate at the time the bank recovered its judgments, and therefore would admittedly be subject to the liens of the judgments, had they been recovered in the county where the land was situated. Where a conversion of realty into personalty is brought about by operation of law, and the effect of legal proceedings, the conversion will not be regarded as complete for any purpose until the sale *has been ratified,* and the purchaser has complied with the terms of it, by paying the money or giving such securities as the decree directs. 6 *H. & J.,* 31. *State vs. Krebs.* 1 *H. & G.,* 267, *Leadenham vs. Nicholson.* 2 *G. & J.,* 81, *Hammond vs. Stier.* 1 *Bland,* 443, *Jones vs. Jones.* 2 *Md. Ch. Decisions,* 366, *Manship vs. Evitts.*

2nd. The fund was under the control of the chancellor until

it had been paid over by the purchaser, and the bank had the right to come in by petition to assert its claim to it. The purchaser himself asked the protection of the court, and the money was paid into court under its order. The case, therefore, is similar to that of *Clagett vs. Worthington,* 3 *Gill,* 95. Again the trustee had no right to assign the bond. 1 *Bland,* 527, *Iglehart vs. Armiger.*

3rd. The recovery of these judgments in another county makes no difference as to the attaching of these liens. A judgment is a lien upon lands, *because* the lands are liable to be sold in satisfaction of the judgment. *Statute of Elegit, Westminster the 2nd,* 13*th Edw.* 1*st, ch.* 18. 1 *Powell on Mortgages,* 273, 274, *note O. Cross on Lien,* 62, 18 *Law Lib.,* 27. 3 *Bland,* 298, *Coombs vs. Jordan.* 1 *Brockenbrough,* 170, *Scriba vs. Deanes.* Such is also the view of the Court of Appeals in 8 *G. & J.,* 38, *Miller vs. Allison.* Again, this lien binds from the date of the rendition of the judgment, and extends to all lands liable to be taken in execution for its satisfaction, without regard to the mode, direct or indirect, of that liability. 1 *Powell on Mortgages,* 275. 3 *Bland,* 660 to 669, *Cape Sable Company's case.* 12 *G. & J.,* 182, *Murphy vs. Cord.* 4 *Gill,* 11, *Doub vs. Barnes. Act of* 1794, *ch.* 54, *sec.* 9, and 1795, *ch.* 23. Such have been the decisions in Virginia. 2 *Call,* 103 to 152, *Eppes vs. Randolph.* 4 *Hen. and Munf.,* 57, *Nimmo's Executors, vs. The Commonwealth.* 2 *Grattan,* 44, *Taylor's Adm'r, vs. Spindle.* And so in Alabama. 4 *Alabama Rep., new series,* 549. Prior to the revolution the act of 1732, *ch.* 4, made all the lands situated in the colony liable for any debt in any court of law or equity in the colony. 3 *Bland,* 306. This statute is now in force, and by virtue of it the writ of *fi. fa.* is now issued against the lands and tenements of the debtor. 3 *Bland,* 308.

*Reverdy Johnson* on the same side.

The only question I intend to discuss is, whether the bank had a lien by virtue of its judgments? and that involves the

questions, is a judgment in one county a lien upon land in another? and if so, when does it commence?

What is the reason why a judgment is a lien? If the reason includes a particular case, the court have no right to exempt that case from the general rule because of inconvenience.

If, as is the fact, the chancery court of the State has decided this question, in the *Cape Sable Company's case,* 3 *Bland,* and that decision was published and long regarded as the law of that court, and no contradictory decision was ever made or published, this fact should have great weight. There has been no legislation or attempt to legislate on the subject, notwithstanding this decision, so long made known as the construction of the law upon this point by the court of chancery.

The reason of the lien is because the creditor can compel payment of his judgment out of the land. Formerly the land could not be sold under a judgment. Afterwards the rents and profits might be reached by the creditors, by a *levari facias.* But still the judgment was no lien, until the statute of *Elegit* made the land liable to execution, after which the judgment was held to be a lien. See the *Eng. statute of* 1732, in 3 *Bland,* 305, and particularly the 4th section. The mode or manner of the execution is not pointed out in this statute, but it simply gives the right to make the debt out of the land without reference to the manner of doing so. It was this statute which gives to a judgment the effect of a lien upon real estate. It is then the mere right to make the debt which gives the lien.

There has always been a court in Maryland, whose jurisdiction in issuing executions extended all over the State, and the judgments of which were liens over the whole State. The general court was one of this description, the chancery court another. The powers of the general court were given to the county courts, and the powers of the court of chancery are now transferred to the circuit courts. Was it intended by these changes to lessen or diminish the rights of creditors? The debtor must be sued in his own county—his lands may all lie in another.

46    v.3

The act of 1794, ch. 54, sec. 9, being in force when the changes in the courts took place, this fact shows, that the legislature did not mean to lessen the rights of creditors. See also *Act of* 1795, *ch.* 23.

It is the *authority to sell* given by the statue of 1732, not the *mode, manner, or time* of selling, which makes the judgment a lien from its date.

The act of 1795, ch. 23, surely gives the right where a *fi. fa.* is sent to another county, to send it again from the second to a third county, and so on throughout the State. Does not this make the judgment a lien from its date throughout the State?

As to inconvenience: The debtor is required to be sued where he resides, and not in every county where he has lands, and this privilege was given for his benefit, and as a compensation for this the creditor ought to have a lien everywhere, because of the inconvenience he is put to in being required to sue the debtor at his home. The chancellor says, our rule will subject innocent purchasers to frauds, but he does not consider that the debtor may, by the other theory, defraud the creditor, for he may defeat the judgment by selling the land after it has been rendered, but before its removal to the county where the land is situated. Purchasers from the debtor are but volunteers, and the creditor ought to be taken care of.

But this *inconvenience* is merely imaginary, for the purchaser has only to go into the county where the land-owner resides to see if there are any judgments. It is true a man may confess a judgment in the county where the land lies, but this would always be suspicious. But the purchaser now must not only examine the records of the county where the debtor resides, but he must look to the records of the Court of Appeals and the court of chancery.

If the theory on the other side is to prevail, the creditor had better have a judgment against him in the court below, and then appeal and get a judgment here, and then he would have a general lien.

The chancellor in this case is in error in regard to the over-

ruling of the *Cape Sable case* by the decision of the Court of Appeals, in *Murphy vs. Cord,* 12 *G. & J.,* 182, 185. What the court say on this point in reference to *Murphy vs. Cord,* is in 4 *Gill,* 11, and this, so far from overruling the *Cape Sable case* in *this particular,* sustains it. See also 8 *G. & J.,* 38, *Miller vs. Allison.* 5 *Do.,* 1.

The testamentary act of 1798, ch. 101, sub-ch. 8, sec. 13, directs judgments and decrees to be paid first, no matter where rendered or passed, and why? because they are a lien upon the real estate of the deceased.

This question has been discussed and decided in 4 *Peters' Rep.,* 134, 135, and 12 *Howard,* 409, 416, 420, and in 4 *Alabama Rep.,* 549.

*Frank H. Stockett, Cornelius McLean* and *Thos. S. Alexander,* were of counsel for the appellees, but the court having expressed a desire to hear the whole argument on the part of the appellants first, the argument for the appellees was made chiefly by *Mr. Alexander* in reply.

1st. It is admitted that not having raised the question as to the form of proceeding instituted by the bank, that question is not open here, although I think the cases of *Maccubbin vs. Cromwell,* 2 *H. & G.,* 443, and *Clagett vs. Worthington,* 3 *Gill,* 95, do not conclude the point.

2nd. Was the fund *realty,* and such that it would be the subject of a lien? The cases of *Leadensam vs. Nicholson,* 1 *H. & G.,* 267, and *Hammond vs. Stier,* 2 *G. & J.,* 81, are not conclusive on this point. See case of *Hunter vs. Hatton,* 4 *Gill,* 127, where it was decided, that the conveyance by the trustee relates back to the day of sale. Steuart had no interest in the land and he could have had none in the fund. The purchase money was not bound by the lien of his judgment. *Hampson vs. Edelen,* 2 *H. & J.,* 64. Such would have been the law if the sale had been made by a private vendor. The principle cannot be varied by the fact, that the sale was a judicial one. The moment the vendor makes a sale capable of enforcement in law or in equity, he has no longer an

estate of inheritance in the land, this has passed to the ven-dee, and the estate remaining in the vendor is but person-alty.

3rd. But the important question is, whether a *judgment* in one county is a lien on lands in a different county? Though the opinion in the *Cape Sable case* was given in 1832, it was not published until 1841, when it was immediately discredited by the case of *Murphy vs. Cord.* The chancellor, in that case, had said, that when the right of execution was supended the lien was suspended also; but the Court of Appeals said, the lien was not so suspended.

The statute of the 5*th of Geo. the 2nd,* 1732, authorising a *fi. fa.* to sell the lands, instead of extending them under an *Elegit,* was relied upon by the other side; but the chancellor, in the *Cape Sable case,* does not rely upon this statute, but solely upon the *Statute of Westminster,* giving the *Elegit* as the origin of the lien. The acts of 1715, ch. 41, sec. 8, and 1777, ch. 12, sec. 3, as to the issuing of a *fi. fa.* against an absconding debtor, gave no right to levy in another county except against such debtor.

By the acts of 1794, ch. 54, sec. 9, and 1795, ch. 23, the process must be *exhausted* in the county where the debtor lives before the land lying in another county can be touched. This cannot be done until the creditor has elected into which county he will go, and the writ has been actually issued. And where there has been one removal the power is exhaust-ed, and you cannot go from the second to a third county. A *scire facias* against *terre-tenants* cannot go against *terre-tenants* in several counties, yet this would be necessary to carry out the doctrine of lien, contended for on the other side. The chancellor, in his opinion in the *Cape Sable case,* admits that before the act of 1794, this extensive right of lien did not exist. He is mistaken in reference to the practice in England—there several *fi. fas.* may be sent to different counties. 2 *Tidd's Pr.,* 1033, 1131. 1 *Lord Raymond,* 216. 3 *Term Rep.,* 657. 3 *Blackstone,* 662. He is also wrong in reference to the date of the lien of a pocket judg-

ment, and the authorities cited do not sustain his position. See 2 *Tidd*, 1132, 1135. 2 *Vernon*, 750. The statute of frauds permits statutes merchants and recognizances to bind only from enrolment. The argument on the other side would make magistrates' judgments binding all over the State, yet the act of 1835, ch. 201, makes the liens of judgments recovered in the magistrates' courts attach only from the time of enrolment.

Our act of 1798, and the *Statute of Westminster*, granting the *Elegit*, relate to entirely different subjects; the former relates to personalty, not to realty, and by it all judgments are placed on an equal footing. The policy of the law is to facilitate the transfer of estates. 1 *H. & McH.*, 407, *Waters vs. Caton.*

Eccleston, J., delivered the opinion of this court.

In this case the chancellor has decided, that a judgment in one county court is not a lien upon land situate in a different county, when such judgment has not been transferred to the county where the land is. In the reasoning and conclusion of the chancellor, on this *particular point*, we agree with him. And as this necessarily denies the right of the appellants to that portion of the fund claimed by the appellee, the order on which this appeal was taken will be affirmed, with costs to the appellee.

As the record presents no question in regard to the *precise time* at which a lien attaches, where a *fi. fa.* is sent from one county to another, we deem it unnecessary to express any opinion on that point. And the view we have taken of the case renders it unnecessary for us to decide the question, whether the sale and proceedings under the chancellor's decree had effected a mutation of the property from real to personal estate, at the time the appellants obtained their judgments in Baltimore, so far as to prevent the judgments from operating as liens, even if a judgment in one county is a lien on land in another, where the judgment has not been transferred,

A decree will be signed in accordance with this opinion.
>                      *Order affirmed, with costs to appellee.*

Mason, J., dissented.

Upon the appeal by the bank, as against Freeland and
Hall, and Welsh, the same judge delivered the following
opinion of the court, Mason, J., dissenting also in this case:

The same question which, at this term, was decided in the
case between these appellants and Benjamin M. Heighe, is
here presented; and the circumstances, in principle, being
the same, we must affirm the order on which this appeal was
taken, with costs to the appellees. A decree to that effect
will be signed.

>                      *Order affirmed, with costs to appellees.*