# ELISHA P. PARKER

## *vs.*

## ELLEN KATHERINE BRATTAN.

*Judgment recorded in other county: lien on land of defendant;
case removed for trial, and judgment recorded in original
proceedings. Scire facias: computation of time; date
of judgment excluded. Bankruptcy: dis-
charge; judgment in slander suit
not affected.*

A *scire facias* is a judicial right founded upon some matter of
record, such as a judgment, recognizance, etc., and requiring
the person against whom it is brought to show cause why
the person bringing it should not have the advantage of such
record.                                               p. 431

A judgment rendered in one county constitutes a lien, under
section 7, Article 17, and section 19 of Article 26 (Code of
1912), upon property of the defendant, such as is specified
therein, located in another county, from the date of the record-
ing of the docket entries and judgment in such county. p. 432

In such a case the recording of such docket entries, etc., consti-
tutes a record upon which a writ of *scire facias* can issue.

p. 432

The same provision of the Code applies where a suit brought in
one county was removed for a trial to another, and there is
filed in the original proceedings a certified copy of the judg-
ment against the defendant rendered in the court to which it
had been removed.                                     p. 432

In computing the time within which the proceedings to renew
   a judgment must be begun, the day on which the judgment
   was entered must be excluded.                          p. 433

Where a judgment was entered October 19, 1899, the twelve
   years within which a *scire facias* can issue dates from and
   includes October 19, 1899, and the writ may be issued up to
   and including October 20, 1911.                        p. 434

A judgment for slander is not a liability from which a bank-
   rupt is absolved by a discharge under the National Bank-
   ruptcy Act.                                            p. 435

*Decided April 10th, 1913.*

Appeal from the Circuit Court for Wicomico County
(PATTISON, C. J., and JONES, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*E. Stanley Toadvin* (with whom was *Geo. W. Bell* on the
brief), for the appellant.

*James E. Ellegood* (with whom were *H. B. Freeny* and
*F. L. Wailes* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

In April, 1899, the appellee sued the appellant in the Cir-
cuit Court for Wicomico County for slander. The defend-
ant filed the general issue plea upon which issue was joined,
and upon the suggestion and affidavit of the defendant, the

Court ordered a transcript of the record to be sent to the Circuit Court for Somerset County for trial. The case was tried in that Court and resulted in a verdict for the plaintiff for five thousand dollars and costs upon which judgment was entered on the 19th of October, 1899. A certified copy of the docket entries was sent from that Court to the Circuit Court for Wicomico County. This judgment remains unsatisfied.

In April, 1900, the defendant filed a petition in the United States District Court for Maryland for adjudication in bankruptcy. It appears from the schedule of debts filed by him that the only debt he owed was this judgment. On June 14th, 1900, by an order of that Court he was discharged from all provable debts and claims, except "such debts as are by law excepted from the operation of a discharge in bankruptcy." On October 19th, 1911, the appellant sued out of the Circuit Court for Wicomico County a writ of *scire facias* to revive this judgment. The defendant moved to quash the writ. This motion was overruled, and the case went to trial upon issues joined upon certain pleas filed by the appellant. As all the questions presented for decision are raised by the exceptions to the testimony and by the prayers, it is unnecessary to discuss the motion to quash or the propriety of the ruling on the pleadings.

The defenses relied on are: first, that there is no record in the Circuit Court for Wicomico County upon which a writ of *scire facias* can be issued; secondly, that the defendant was discharged from the judgment by the order of the Court above mentioned; and thirdly, that the proceeding was barred by limitations.

"A *scire facias* is a judicial writ founded upon some matter of record such as a judgment, recognizance, letters patent, etc., and requiring the person against whom it is brought to show cause why the person bringing it should not have the advantage of such record, or, as in the case of *scire facias* to repeal letters patent, why the record should not be annuled or vacated; also the name of a writ, and of the

whole proceeding, founded on some public record." 35 *Cyc.*
1148.

Now, what was the record in the Circuit Court for Wicomico County upon which the writ was based? The record of the proceedings in that suit up to the time of its removal was there, and there was also filed in the case and of record a certified copy of the judgment rendered in the Circuit Court for Somerset County.

It is provided by section 7, Article 17 of the Code of 1912 as follows:

"The clerks of the courts of this State may issue an execution on judgment or decree at any time after the rendition thereof, directed to the sheriff of another county, whether the return of *nulla bona* to a writ of execution issue to the sheriff of the county or city wherein the said judgment or decree was rendered has been made or not, 'which writ of execution, issued and directed to the sheriff of another county, shall be made returnable to the Circuit Court for the county to which it may be sent, and if sent to the City of Baltimore returnable to the Superior Court of said city; and there shall be sent therewith by the clerk issuing the same to the clerk of the Court to which said writ shall be returnable a copy of the docket entries in the case, *upon which the Court may proceed on said execution by renewal or otherwise, in the same manner as if the said execution had issued on a judgment or decree rendered in said Court;* and an attachment on judgment or decree shall be regarded as an execution within the meaning of this section; provided, that no judgment or decree shall be a lien upon real estate situated in another county from that wherein the said judgment or decree was obtained, or in the City of Baltimore. *except from the date of the entry of the copy of the docket entries by the clerk of the Court to which said writ shall be returnable";* and by section 19, Article 26, it is provided that "every judgment rendered by any of the courts of law of this State shall be and constitute a lien to the amount and

from the date thereof upon all leasehold interests and terms for years of the defendant in land, except leases from year to year and leases for terms of not more than five years and not renewable, to the same extent and effect as liens are created by judgment upon real estate, and a certified copy of the docket entries from the clerk of a Court where any judgment is obtained, or judgment of any justice of the peace originally recorded, when recorded upon the judgment record of any other Court in the counties of this State or the City of Baltimore, shall be and constitute a lien, from the date of its being so recorded, upon the property of the defendant in said county or City of Baltimore, to the same extent as in the county or city where the said judgment was originally obtained or justices' judgment originally recorded".

By the force of these statutory provisions the judgment rendered in Somerset County became a lien upon such property of the defendant specified therein located in Wicomico county from the date of the entry of the docket entries in that Court, and this record of the docket entries in Wicomico county became in legal effect a judgment of that Court. This was so held in *Hayden* v. *Stewart,* 1 Md. Ch. 460. In that case the effect of the record of the transcript of a judgment from another Court was considered and the transcript of the docket entries was treated as a transfer of the judgment itself, *Chancellor Johnson* saying: "When a judgment has been thus transferred, and become in effect a judgment of the county Court to which the execution and short copy was sent, it seems to me it should from that time have all the incidents and qualities of a judgment rendered in the latter Court, and of course of a lien on the lands of the defendant". This was affirmed in *Farmer's Bank* v. *Heighe,* 3 Md. 357. Upon the authority of these cases, we hold that there was a record in the Circuit Court for Wicomico County upon which the writ of *scire facias* could have been issued.

As to the plea of limitations. Section 20, Article 26, of the Code provides "that at any time before the expiration of twelve years from the date of such judgment or decree, or in case of the death or marriage of any defendant in the judgment, the plaintiff shall have the right to have a writ of *scire facias* to renew, or revive the same"; and by section 3, Article 57 of the Code it is provided "that no bill, testamentary, administration or other bond (except Sheriff's and Constable's bonds), judgment, recognizance, statute merchant, or of the staple or other specially whatsoever, except such as shall be taken for the use of the State, shall be good and pleadable, or admitted in evidence against any person in this State after the principal debtor and creditor have both been dead twelve years, *or the debt or the thing in action is above twelve years' standing."* Was this writ issued before the expiration of twelve years from the 19th of October, 1899—the date of the judgment? If so, the plea of limitations is a good defense to the action.

The writ, as we have seen, was issued on the 19th of October, 1911. The rule is that in the computation of time within which the proceeding to revive the judgment must be begun the day on which the judgment was entered must be excluded. In *Sheets* v. *Sheldon,* 2 Wall. 177, the Court said that "the general current of modern authorities in the interpretation of contracts, and also of statutes, where time is to be computed from a particular day of a particular event, as when an act is to be performed within a specified period from or after a day named, is to exclude the day thus designated, and to include the last day of the specified period. 'When the period allowed for doing an act' says Mr. CHIEF JUSTICE BRONSON, 'is to be reckoned from the making of the contract, or the happening of any other event, the day on which the event happened may be regarded as an entirety, or a point of time; and so excluded from the computation.' *Cornell* v. *Moulton,* 3 Den. 16; see also *Bigelow* v. *Willson,* 1 Pick, 485."

This rule was adopted in *German Lutheran Church* v. *Heise,* 44 Md. 453, and in *Steuart* v. *Meyer,* 54 Md. 454. Under this rule the twelve years commenced to run from October 20th, 1899, and, therefore, the *scire·facias* was issued before the expiration of the statutory period.

The next question is this: Was the judgment a liability from which the defendant was discharged under the bankrupt law? That Act exempts from the operation of the discharge judgments "for wilful and malicious injuries to person or property." It was decided in *Sanderson* v. *Hunt,* 116 Ky. 435, that a judgment for slander was not a liability from which a bankrupt was discharged under the national bankruptcy act. The Court held, upon reasons which we consider satisfactory, that such a judgment fell within the exception above quoted. It was there said that "an essential element of every slander is that it shall have been maliciously uttered. Any act that is done unlawfully and maliciously is necessarily wilfully done; that is, it is done of the volition of the actor. A slander is necessarily a malicious and wilful act. It is argued for the appellants that the injury done by slander is neither to the person nor to the property of one about whom it is spoken. At common law the right of personal security consists in a person's legal and uninterrupted enjoyment of his life, of his limbs, his body, his health, and his reputation. Of the 'rights of persons' referred to by *Blackstone* (Bl. Com. 134), their infringement is discussed in part in this language: 'The security of his reputation or good name from the acts of detraction and slander are rights to which every man is entitled by reason and natural justice; since without these it is impossible to have the perfect enjoyment of any other advantage or right.' In Vol. 2, p. 118, Bl. Com. (Cooley), under the head of 'Injuries Affecting Personal Security' he says: 'As to the injuries which effect the personal security of individuals, they are either injuries against their lives, their limbs, their body, their health, or their reputation.' All these, as is each of them, are injuries

to the person.   The Act of Congress must be understood as having used the words in the section quoted with reference to their common law acceptation."

It is apparent from the schedule of debts filed by the defendant that his sole object in applying for the benefit of the bankrupt law was to free himself from the obligations of this judgment.   In *Colwell* v. *Tinker,* 169 N. Y. 531, the Court said: "The policy of the bankrupt law is to discharge the honest and unfortunate debtor from his contract obligations, and not free him from judgments involving his fraud which implies moral turpitude or intentional wrong, or judgments from wilful and malicious injuries to the person or property of another."   The conclusion we have reached upon the questions considered settle adversely to the appellant all the defenses relied on by him to defeat the judgment, and sustains the action of the lower Court in all its rulings on the pleadings, evidence and prayers.   The judgment will, therefore, be affirmed.

> *Judgment affirmed, the appellant to pay the costs above and below.*