## NATIONAL FIRE INSURANCE CO. v.
## WALTER ALBERS

[No. 43, October Term, 1934.]

*Decided November 23rd, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Charles Markell, Jr.,* and *J. Ralph Warnken,* with whom were *Cook & Markell* on the brief, for the appellant.

*William H. Lawrence,* for the appellee.

URNER, J., delivered the opinion of the Court.

By the policy which is the basis of this suit, the plaintiff was insured to the amount of $2,000, against "direct loss and damage by windstorm, cyclone and tornado," to his dwelling house and garage, on Miller's Island, in Chesapeake Bay, within the limits of Baltimore County. The buildings were damaged by a storm which began on the morning of August 23rd, 1933, and continued until the early hours of the following day. It was a storm of extraordinary violence. The wind reached a velocity of fifty miles an hour and the island was inundated to the depth of several feet by the waters of the bay, when the tide was raised to that abnormal height by the force of the hurricane. Many trees on the island were blown down and a number of houses demolished or badly damaged. The island was abandoned by its inhabitants until the storm and water subsided. The plaintiff's dwelling house, a frame bungalow, was practically ruined. It had been erected on concrete pillars about thirty inches high, on a site seven or eight feet above the level of the beach, and thirty-five feet to the rear of a sea wall five or six feet high, by which the front of the lot was retained and protected from the tide. On the morning after the storm had abated, the plaintiff's house was found to have been forced from its supporting pillars and its condition is thus described in the testimony: "The front of the house was wrenched entirely from the building, as the photographs will show. The second portion and kitchen section on the south, on the east side, were wrenched from the building. * * * There were shingles broken off of the roof and the side walls and rear walls looked like they had been wrenched away from the rafters."

The defense to the suit, which resulted in a verdict and judgment for $1,200 in favor of the plaintiff, was based upon provisions in the policy that the insurer should not be liable for "loss or damage occasioned directly or indirectly by or through any * * * tidal wave, * * * high water, overflow, nor cloud burst * * *," nor "for any loss or damage caused by water or rain, whether driven by

wind or not, unless the building described * * * shall first sustain an actual damage to roof or walls by the direct force of the wind, and shall then be liable only for such damage to the interior of the building * * * as may be caused by water or rain entering the building through openings in roof or walls made by direct action of the wind. * * *"

The trial court framed and delivered an instruction to the jury that the policy sued on did not insure the plaintiff against loss or damage caused directly or indirectly by tidal wave, high water, overflow, or cloudburst, water or rain, whether driven by the wind or not, and further, at the defendant's request, instructed the jury that the burden was upon the plaintiff to prove by a preponderance of evidence that the damage to his dwelling and garage was caused by a windstorm, cyclone, or tornado, and not either directly or indirectly by tidal wave, high water, or overflow, whether driven by rain or not, and that the jury, if they found for the plaintiff, should not make any award to him for such part of the damage as they might find to have been caused directly or indirectly by wind driven high water or overflow. But primarily the defendant endeavored to procure instructions that there was no legally sufficient evidence of damage to the plaintiff's dwelling and garage caused by windstorm, cyclone, or tornado, and that from the uncontradicted evidence such damage appeared to have been directly or indirectly caused by high water or overflow, and that the verdict should therefore be in the defendant's favor. The refusal of the court thus to direct a verdict for the defendant was the main subject of the argument on this appeal.

Upon the evidence in the record, our conclusion is that the court below was right in declining to withdraw the case from the jury. It could be rationally inferred from the testimony that the windstorm was the cause of the principal damage to the plaintiff's buildings. As they stood, according to the proof, upon the highest part of the island, they were exposed to the extreme force of the

wind but not to the full effect of the inundation. Before the water had risen to the level of the house, a large window in its front had been "blown down." It was testified that the strength of the wind later increased, and that it blew with the greatest force from half past 9 until half past 1 o'clock in the night. A witness who left the island about 8 o'clock, when the water had not reached the first floor of his house, standing on ground lower than the plaintiff's, stated that before his departure the house was "shaking" and "quivering like it would rock or jump." The condition, after the storm, of a dwelling which had stood on a lot adjacent to that of the plaintiff, was thus described in the testimony: "Most of it was over in the road * * * and the other part of it, 500 feet back there was still more, some in the trees and some down on the ground." There was testimony to the effect that houses on ground lower than the plaintiff's lot, and consequently more exposed to the overflow and less to the wind, remained in position through the storm. The photographic evidence of the damage to the plaintiff's dwelling was before the court and jury, and it showed destructive results which could reasonably be regarded as attributable to the action of the wind rather than of the water. The question was one of fact to be determined upon a consideration of all the circumstances proved. In our opinion, the evidence admitted of a legitimate inference favorable to the plaintiff's right of recovery.

The cases in other jurisdictions cited by the appellant, involving policies similar to the one here in suit, have been examined; but they are not sufficiently analogous in their controlling facts to influence our decision as to the legal adequacy of the evidence presented in this record.

The policy issued to the plaintiff required proof of loss to be rendered to the insurer "within sixty days after the windstorm, cyclone or tornado, unless such time is extended in writing. * * *" Proof of loss, referring to the storm as having occurred on August 23rd, 1933, was mailed to the insurance company on October 21st. It was received by the company on October 23rd, the sixty-first

day after the date of the storm as mentioned in the proof of loss and also in the declaration. The time for rendering such proof was not extended by the insurer, and it is therefore said to have been filed too late for the purposes of the policy requirement and for the maintenance of this suit. The argument upon this point was directed largely to the question as to whether the proof of loss could be regarded as having been "rendered" on the day it was mailed or only on the date of its receipt by the insurer. The decision of the Court of Appeals of New York in *Peabody v. Satterlee*, 166 N. Y. 174, 59 N. E. 818, was cited in support of the latter view, while *Manufacturers' & Merchants' Mut. Ins. Co. v. Zeitinger*, 168 Ill. 286, 48 N. E. 179, and other cases, 26 *C. J.* 373, and 7 *Couch, Cycl. of Ins. Law* (1930 Ed.) sec. 1523, are cited as sustaining the first stated theory. It is unnecessary in this case to decide as to which of those conflicting views should have our approval, because the storm which caused the damage sued for was proved at the trial to have continued until the early morning of August 24th, and hence the receipt of the proof of loss on October 23rd was within the prescribed sixty-day period as properly computed. *Parker v. Brattan*, 120 Md. 428, 433, 87 A. 756; *Winter v. O'Neill*, 155 Md. 624, 142 A. 263. In view of that evidence it would not be just to bind the plaintiff by a reference in the proof of loss and declaration to August 23rd, as the date of the storm, and thus to defeat his right to recover on the contract of insurance, if it be assumed that the mailing of the proof of loss on October 21st would not otherwise have been a sufficient compliance with the policy.

The instructions to which we have referred fairly and adequately submitted the issue to be decided by the jury, and we find no error in the trial court's refusal of certain other instructions which the defendant proposed.

*Judgment affirmed, with costs.*