## VARY *v.* NORTON and others.

*(Circuit Court, W. D. Michigan, S. D.* January 15, 1881.

**1. PROMISSORY NOTE—PRINCIPAL AND SURETY.**

Where A., B., and C. are joint and several makers of a promissory note, and after its execution and delivery A. agrees with B. and C. to pay the note, the relation of principal and surety arises between the parties.

**2. SAME—SAME—PAROL EVIDENCE.**

Parol evidence of such agreement is admissible, and does not tend to contradict the written contract, but shows the changed relation between the makers.

**3. SAME—SAME—EXTENSION OF TIME OF PAYMENT.**

If the holder, with notice of such agreement, for a valuable consideration, extend the time of payment of the note for a definite period, the sureties, B. and C., are thereby discharged.

**4. SAME—SAME—SAME—PAYMENT OF USURIOUS CONSIDERATION.**

The payment of a certain sum of money for the extension of time, though regarded as a payment of usurious interest, constitutes a valuable consideration under the statute of Michigan.

*Assumpsit.* Trial before the Court.

*Simonds & Fletcher,* for plaintiff.

*G. Chase Godwin,* for defendants Norton and Lee.

*R. W. Butterfield* and *J. W. Champlin,* for defendant King.

WITHEY, D. J. The suit is upon a promissory note. Defendants Norton, Lee, and King defend. Judgment by default against all the other defendants. King pleads sepa-

rately that the consideration of the note is in part usurious; that payments of interest have been usurious, and that he is the surety of Norton, and has been discharged from liability by the time of payment having been extended by plaintiff without his knowledge or consent. Norton and Lee join in their defence, which is the same in substance as set up by King. The note was made by all the defendants, at Lowell, in this state, March 27, 1871, by which they jointly and severally promised to pay to William Vary or order, five years after date, $2,000, with interest at the rate of 10 per cent. per annum, payable semi-annually. All the interest that matured prior to September 14, 1873, was paid to the payee; at or soon after which date the note passed to plaintiff, and he, as holder thereof, has since received the interest to March 27, 1876. All payments of interest have been at the rate of 10 per cent. on the face of the note.

Defendant Norton has, since this suit was commenced, made two payments—one of $200, June 19th, and the same amount October 8, 1877. The consideration of the note was only $1,790, money loaned to all the defendants, while $210 included in the note was usury, to which extent the consideration fails. Plaintiff is chargeable with notice of all the facts. A computation based upon the actual consideration of the note, with interest at 10 per cent. thereon, less payments made by way of interest, shows that the amount remaining unpaid at the date of this opinion is $1,994.54. On the seventeenth of November, 1873, after the note came into the hands of plaintiff, defendant Norton agreed, for a valuable consideration, with defendants Lee and King, to pay the note. Of this arrangement the plaintiff had seasonable notice. On the fourth of April, 1876, plaintiff and defendant Norton made an agreement by which Norton paid to plaintiff $460, which met all interest due on the face of the note to that time, the taxable costs of a suit pending against all the defendants on the note, and an excess of about $15. This latter sum was paid and received as consideration for the agreement of plaintiff then made with Norton to extend the time for the payment of the principal sum to March 27, 1877,

without the knowledge of defendants Lee and King. Defendant Lee had, on the sixteenth of March, 1876, written to plaintiff a letter in which he says: "Mr. Norton's prospects are very good, and just as soon as he can get the money out of his logs he will pay you. I hope you will not make any expense, as it is about impossible to get money here now." The presumption that Norton was pecuniarily responsible and good for this debt in the spring of 1876 has not been rebutted by proof, but that he became insolvent in 1877 appears.

## THE LEGAL QUESTIONS.

The case presents, first, the question whether one or more joint and several makers of a note, all of whom are at the making of the debt principal debtors, can change their relation without consent of the creditor, so as to deprive him of the right he had to treat all of them as principal debtors in any transaction touching the debt. This does not involve the question whether parol evidence is admissible to show that one who signed as a joint and several maker was only a surety for his co-maker. On that question the authorities are far from uniform. They are cited in Parsons on Bills and Notes, (2d Ed.) 233–4. See, also, 64 N. Y. 457; 5 Dillon, 140.

The relation of principal debtor and surety arose in this case subsequent to the execution and delivery of the note, and after the plaintiff became the holder of it. The evidence which has been introduced does not, therefore, tend to contradict the written contract, but to show the changed relation between the makers Lee and King, and Norton. The question as to the effect produced upon the rights of the parties under such circumstances has arisen most frequently in reference to partnership indebtedness, when one partner retires and the other retains the business and agrees to pay the firm debts. In this state it is held that if a creditor, after being informed of the new arrangement between the partners, enters into a valid agreement by which the time of payment is extended without consent of the retiring member,

the latter is discharged, on the ground that he had become a surety, and was entitled to the benefit of a surety's rights. *Smith* v. *Sheldon,* 35 Mich. 42.

The same view was held in *Millerd* v. *Thorn,* 56 N. Y. 402. See cases cited in the opinions.

But in *Swire* v. *Redman,* Law R. 1 Q. B. 536, it was held quite the other way. By it the previous case of *Oakley* v. *Pasheller,* 4 Cl. & Fin. 207, decided in the house of lords, and cited by Judge Cooley in *Smith* v. *Sheldon,* and by defendants' counsel in this case, to support the rule that an agreement to forbear discharges such retired partner on the ground that he is a surety, is quite explained away, and denied to be an authority for such view. I have not at hand the case of *Oakley* v. *Pasheller.*

It seems to me that when Norton agreed with Lee and King to pay the note there was created between them the relation of principal debtor and surety, by virtue of which Lee and King became entitled to indemnity from Norton, if payment should be made by them on account of his default, and that they had the right to pay at any time after the debt matured, and bring suit at once against Norton for indemnity. The relation of principal and surety is fixed by the debtors without any action of the creditor. They have a right to arrange such relation between themselves at any time. No change is thereby produced on the contract rights of the creditor; all the makers continue jointly and severally liable as when the note was signed. But when the creditor has notice that, by an arrangement between the makers, one or more of them has become entitled to the rights of a surety, he is as much bound, upon principles of justice, to regard those rights, and to do no act to abridge them, as if such makers had originally signed as sureties. In either case the discharge of the surety is always brought about by the act of the creditor, and not by a change of his contract rights under the note. In reference to accommodation makers, indorsers, etc., the law is too well settled to allow of discussion, that a valid agreement by the creditor to extend the day of payment without their consent discharges them. The reason upon which such

rule rests, and its application to sureties to whom no injury has resulted, might not, at this day, bear the test of justice and common sense; but it is a doctrine too long sanctioned to be questioned in the courts.    I cannot regard *Swire* v. *Redman* as resting upon reasons that ought to control this case.

The other question is as to the validity of the agreement to forbear, viz.: whether the payment of usurious interest constitutes a valuable consideration to uphold the agreement of plaintiff to give time.    It is claimed that the $15 paid for the extension of time was interest for the use of the money represented by the note, and was so much in excess of the highest rate allowed by law.    Treating it as a sum paid for forbearance, it is interest.    In Michigan, whenever parties so agree, 10 per cent. is collectible; there is no positive prohibition against taking a higher rate, and a higher rate paid cannot be recovered back from the creditor.    The statute provides that no contract whereby a greater rate of interest is directly or indirectly reserved or received than is allowed by law, shall thereby be rendered void; but in an action to recover upon such usurious contract, the plaintiff, subject to certain exceptions, shall have judgment for the principal and legal interest only, exclusive of the usury.    The courts are nearly uniform in their judgments that a *promise* to pay usurious interest will not uphold an agreement to forbear, because the promise cannot be enforced, though it was held otherwise in *Wheat* v. *Kendall*, 6 N. H. 504.    But when the usurious sum has been paid, learned judges differ whether there is a consideration to uphold the agreement or not.

In New York and Vermont the statute declares contracts tainted with usury to be void; and if usury has been paid, it can be recovered back, with a penalty against the taker.    In the former state it was held by two judges, without dissent from the other two, that payment of usury does not afford a consideration.    *Vilas* v. *Jones*, 1 N. Y. 274.

In Vermont, on the other hand, a united court has repeatedly held the other way.    *Turrill* v. *Boynton*, 23 Vt. 142; *Burgess* v. *Dewey*, 33 Vt. 618.    In South Carolina and Missouri such contracts are not void by statute, and in both it

has been held that usury paid will not uphold an agreement to forbear. *Cornwall* v. *Holly*, 5 Richardson, (S. C.) 47; *Bank* v. *Harrison*, 57 Mo. 503. Plaintiff's brief also cites 1 J. B. Lee, (Tenn.) 360; 48 Me. 35; 12 Kan. 500.

In Wisconsin it was decided, in *Meswinkle* v. *Jung*, 30 Wis. 361, that usurious interest paid was not a sufficient consideration; but in a recent case the earlier decision has been overruled. *Hamilton* v. *Prouty*, 7 N. W. Rep. 659, 3 Wis. 291.

In Kentucky, Indiana, Illinois, and Ohio, the statute, like that of Michigan, does not make the contract void, and the decisions are uniform that usurious interest paid is a valuable consideration and upholds the agreement to forbear. *Kunningham* v. *Bradford*, 1 B. Monroe, 325; 8 B. Monroe, 382; *Cross* v. *Wood*, 30 Ind. 378; 3 Ind. 346; 15 Ind. 115; 17 Ind. 202; *Whittemore* v. *Ellison*, 72 Ill. 301; 73 Ill. 170; 78 Ill. 257; *McComb* v. *Kitteridge*, 14 Ohio, —. See 1 Pars. on Notes and Bills, (2d Ed.) 240.

It is not believed that courts of justice, where the statute declares that usury shall not render a contract void, ought to allow the usurer to plead successfully want of consideration to defeat his agreement, when he has received and appropriated the money of his debtor. It is manifest that the money paid by Norton cannot, under the law of this state, be recovered back by him, and none of the other defendants have any claim upon it. Usury is a personal defence, to be interposed by the debtor, or by those who, by reason of interest acquired in the subject-matter, are entitled to employ his defences. 1 Mich. 84; 11 Mich. 59.

I agree with opinions in some of the cases that he who accepts usury as consideration for his agreement is estopped from claiming want of consideration. It is no offence, and is not wrong *per se*, to take usury, and there is no justice in saying that money, because received as usury, has no legal value. Usury laws are designed as a protection to the debtor class, and not as a shield for the usurer. After Lee and King have pleaded the validity of the agreement to forbear, their right to have the $15 applied as a payment on the note is

waived, if such right ever existed. But the right exists only when the payment is usury, and I do not see why the $15 may not be regarded as so much paid by way of interest in advance, rather than have the agreement fail for want of consideration, though I have treated the payment as usury, as was claimed and argued on both sides. Lee's letter to plaintiff, expressing a hope that he would "not make any expense," does not appear to have been acted on by plaintiff; but, I infer from facts in the case, he did make expense by suit subsequent to the date of Lee's letter, which suit was discontinued after the agreement to extend the payment. However that may be, the letter is not consent to an agreement to extend the day of payment for a year, and does not prevent Lee from insisting on the defence that he is discharged.

Judgment of no cause of action will be entered in favor of defendants Lee and King, and in favor of plaintiff, and against all other defendants, for $1,994.54 damages, and for costs of suit, to be taxed.