BARNEY v. TONTINE SURETY CO.

1. CONTRACTS—GAMBLING.

> A contract whereby a company, in consideration of the pay-
> ment of $80 in weekly installments of $1.25 each, agrees to
> deliver to a person a diamond, and then to buy it back, if he
> does not desire it, for $120, all payments made to be forfeited
> for a failure to make any of them, is not a gambling con-
> tract.[1]

2. SAME—USURY.

> The contract, however, being made by a company whose busi-
> ness consists of making such contracts, is usurious, as a prom-
> ise to repay money with an advance of 50 per cent. thereon,
> and the person's remedy, as against the original company, is
> limited to a recovery of the payments made.

3. SAME—RIGHTS OF ASSIGNEE.

> But the defense of usury is a personal one, and cannot be inter-
> posed by an assignee of the company.

Error to Wayne; Donovan, J. Submitted April 10,
1902. (Docket No. 53.) Decided June 24, 1902.

*Assumpsit* by Daniel D. Barney against the Tontine
Surety Company of New Jersey on certain tontine dia-
mond contracts. From a judgment for defendant on ver-
dict directed by the court, plaintiff brings error. Re-
versed.

*Fink & O'Connor*, for appellant.

*John J. Speed*, for appellee.

HOOKER, C. J. The plaintiff was a party to four con-
tracts with an alleged concern calling itself the Tontine
Surety Company, all substantially alike, of one of which
the following is a copy:

---

[1] See *Rehberg* v. *Tontine Surety Co.*, *ante*, 135.

" Incorporated under the Laws of the State of Michigan.
" Series 21.                Numbers 15, 16, 17, and 18.
            " The Tontine Surety Company.
    "Home Office, Whitney Opera House Block,
                " Detroit, Mich.
            " Capital Stock, $50,000.00.
            " Diamond Investment Contract.
" This Contract is One of a Series of Contracts of Like
    Tenor, Numbered from 1 to 100.

" Know all men by these presents that in consideration
of D. D. Barney, of Flint, Michigan, the holder hereof,
well and truly making each and all of the payments herein
provided for, to be made by him at the time and in the
manner herein specified,—time, manner, and amount of
payment being of the essence hereof,—the Tontine Surety
Company of Detroit, Michigan, will purchase from its
redemption fund, sell and deliver to him, or to his legal
representatives and assigns, a commercial white, clear,
and perfect diamond, of the weight of one and one-half
carats; the same to be delivered upon surrender of this
contract within three months after making the 63d pay-
ment hereon.

" In case the holder hereof does not desire his one and
one-half carat diamond after the same is delivered to him,
the Tontine Surety Company agrees to buy it back at the
time of delivery for $120.00 in cash.

" The Tontine Surety Company is hereinafter designated
as the ' Company,' and the person to whom this contract
is issued is hereinafter designated as the ' Holder.'

" The holder hereof hereby promises and agrees to pay
the company, at its home office in the city of Detroit, as
and for the consideration hereof, the full sum of $80.00, in
the following manner, to wit: $1.25 on delivery hereof,
the receipt of which is hereby acknowledged, and $1.25
on or before the last day of each calendar week following
the date hereof, for sixty-three consecutive weeks there-
after.   If he shall fail to pay any of said installments
within the week in which it is payable, the said delinquent
installment, together with the additional sum of $1, may
be paid at any time before the end of the next succeeding
calendar week.   But if he shall fail or neglect to pay any
of said weekly installments at the time and in the manner
herein provided, and shall continue in such default for more
than one week, then and in that case this contract shall,
because of said default, become and be wholly null and

void, and all payments made thereon shall be forfeited, and said sums so paid shall be retained by the company as agreed liquidated damages for the nonperformance thereof by the holder. The holder shall, within three months after making his 63d payment hereon, present this contract to the company's office for redemption; and, in case of failure so to do, then said contract holder waives all rights under this contract, and the same becomes null and void.

"The company shall employ $1.00 out of each weekly installment after the fourth payment paid on this and similar contracts in the purchase and delivery of a diamond required for the fulfillment of these contracts, and said $1.00 and all fines and transfer fees shall be kept in what is known as the 'Redemption Fund' of said company.

"In case of the death of the holder hereof during the time this contract is in force, the company agrees to return to the holder's legal representatives, upon the surrender of this contract, receipted by the proper person or persons, within six months from the date of the holder's death, the amount of money that the holder hereof has actually paid to the company on this contract.

"This contract is transferable, but no transfer will be recognized by the company unless first registered with the company, for which a registration fee of $5.00 will be charged. This contract is issued pursuant to a printed application signed by said holder, the conditions of which are a part hereof.

"In witness whereof, the Tontine Surety Company has caused this contract to be signed by its president and secretary, and its corporate seal to be hereto attached, this 15th day of September, 1899.

[Seal.]          "R. J. FARMER, President.
                 "M. SHELLEY, Secretary.

"No agent or solicitor has any authority to collect weekly dues on contracts unless authorized in writing by the secretary, under the seal of this company. All rights reserved."

As will be noticed, this undertaking is not signed by the plaintiff; but it was issued by the company in consideration of the payments therein provided for, all of which were duly and seasonably made. It is claimed by the plaintiff that subsequently the company's assets were sold to the defendant, a New Jersey corporation, which assumed its obligations upon these contracts. The plaintiff claims

performance by himself, and seeks a recovery upon the contracts for $480 and interest. The learned circuit judge held these to be gambling contracts, upon which no recovery could be had in this action,—relief, if any, being in equity,—and directed a verdict for the defendant, from which the plaintiff has appealed.

The only question that needs consideration is whether this was an illegal contract, upon which the plaintiff was not entitled to a verdict. Upon its face, this contract, at the most, requires, in substance, that, upon payment according to its terms, the tontine company shall pay to the other party an amount equaling the aggregate of the payments, and 50 per cent. thereof additional. The agreement to sell and deliver a diamond of a given description upon the completion of such payments is not an unlawful contract in itself. It is like any other sale of property. It only becomes illegal, if at all, through the agreement to repurchase the diamond at an advanced price. We should refuse to take notice of what society knows did we not say that this was nothing more than an evasion, and that the real contract was a usurious one. It cannot be said to be a gambling contract, for there is no element of uncertainty in it. The payment is not made dependent upon the happening of any event, except performance by the other contracting party, and in this respect it is like any other executory contract having a forfeiture clause. Prominence is given to the fact that such contracts would be ruinous to the tontine company, and that the only way that it could hope to make such a business profitable would be through forfeitures, and that evidently the parties must have so understood it. If it be admitted that this is so, the fact remains that the contract of the tontine company is an unqualified promise to pay, in no way dependent upon lapses or forfeitures of third parties.

But we have no hesitation in declaring the contract usurious, because it is an unqualified promise to repay money with interest at upwards of 50 per cent. for the average period covered by payments. The question is not

affected by the fact that the contract does not purport to create a loan, for it does that in effect. It is in effect, and at the option of the patrons of the company, a promise by the company to pay money for the use of money. We do not mean to be understood as saying that a valid contract might not be made for the sale of a chattel for a fixed price, with an obligation to repurchase at an advanced price at the option of the vendee, or that, in every such case where such repurchase price should exceed the original purchase price, it would be usurious; but in a case like the present, where the business of a concern consists in making such contracts, we can come to no other conclusion than that the only object of the contract was a usurious promise to repay money, with an advance of 50 per cent. upon it.

It is manifest that this business can be nothing but a fraud, for it is inconceivable that it could be honestly and profitably conducted by its projectors for any great length of time, and it is perhaps doubtful if those engaged in it might not be liable to prosecution as common cheats. But if this be true it would not entitle the plaintiff in this case to enforce his contract against the original party to it for more than the principal, as provided by statute; for he has voluntarily yielded to his cupidity, and become a party to a usurious contract, forbidden by law. But the defendant in this case cannot set up the defense of usury, which is a defense personal to the party who makes the contract, and not to an assignee. *Spaulding* v. *Davis*, 51 Vt. 79; *Low* v. *Mussey's Estate*, 36 Vt. 183; *Lamoille County Nat. Bank* v. *Bingham*, 50 Vt. 105 (28 Am. Rep. 490); *Reed* v. *Eastman*, 50 Vt. 67; *Ready* v. *Huebner*, 46 Wis. 692 (1 N. W. 344, 32 Am. Rep. 749); *Nance* v. *Gregory*, 6 Lea, 343 (40 Am. Rep. 41); *Farmers' & Mechanics' Bank* v. *Kimmel*, 1 Mich. 84; *De Wolf* v. *Johnson*, 10 Wheat. 367; *Sellers* v. *Botsford*, 11 Mich. 59; *Vary* v. *Norton*, 6 Fed. 813.

The judgment is reversed, and a new trial ordered.

Moore, Grant, and Montgomery, JJ., concurred. Long, J., did not sit.