SOLOMON GLASS ET AL. *v.* THIRD NATIONAL BUILDING AND LOAN ASSOCIATION.
[No. 8, October Term, 1928.]

*Decided November 14th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, and SLOAN, JJ.

*James Morfit Mullen,* for the appellants.

*Jacob S. New* and *Edward L. Putzel,* with whom was *Gilbert H. Panitz* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City dismissing the exceptions of the appellants to the auditor's account distributing the proceeds of a sale under a mortgage made by the appellants to the appellee.

The Modern Realty Corporation was the owner of a lot of ground and premises known as No. 4131 Dalrymple Avenue in Baltimore. By agreement made November 16th, 1923, it sold the lot to Solomon Glass, one of the appellants, at the price of $10,000, in the event that the title should be taken in fee simple, or at $8,200 if title should be taken subject to an annual ground rent of $108; the purchaser paying $100 cash at the signing of the agreement and agreeing to pay the additional sum of $400 on the date of settlement, to give a note for $500 to be payable with interest six months after the date of settlement, "and the balance between this payment of cash and interest and the purchase price, the party of the first part, the Modern Realty Corporation agrees to finance for the second part so that the party of the second part will not be required to pay in any more money than herein specified on account of the purchase of the aforementioned property; and the financing will be so arranged that the party of the second part will only be required to pay approximately $20 per week to take care of the payments on any mortgage or mortgages which may be obtained by the party of the first part on such advances. The party of the first part has the option of financing the same by creating a ground

28

rent of $108, and upon completion of the above arrangements for the financing of the aforesaid property as hereinbefore set forth, the party of the first part will transfer title to the aforesaid property by a good and merchantable title to the party of the second part, it being understood that the word "expense" in this instance shall not mean expenses in connection with securing the proper financing or creation of the ground rent on the aforesaid property, but it means such expenses as attorney fees, recording, insurance, etc."

In pursuance of this agreement a first mortgage was given to the Clifton Savings Bank for $3,700—the record does not show by whom—which is not involved in this proceeding, and a second mortgage was made by Solomon Glass and his wife, the appellants, to the Third National Building & Loan Association for $3,400, and it is the distribution of the fund arising from the foreclosure of the latter mortgage which is involved in this case, and particularly the sum of $675, which is included in the memorandum of settlement between the appellee and the appellants as an "entrance fee," the appellants contending that this sum was a usurious charge made by the appellee against the appellants, and the appellee contending that this was a charge paid the appellee by the Modern Realty Corporation for financing the mortgage loan from the appellee to the appellants.

It appears that the purchaser, Solomon Glass, chose to take the property subject to a ground rent of $108 per year, so that he purchased the leasehold estate at $8,200, and that this was the gross amount under his agreement which he was required to pay for the property; and, because he was not required by the appellee to pay $675 or any sum in addition to the purchase price fixed in his agreement with the Modern Realty Corporation, the appellee contends that the usurious charge was not paid by him but was paid to the appellee by the Modern Building Corporation, and it being a third party to the transaction, appellants, under the decision in *Chipman v. Farmers & Merchants Bank,* 121 Md. 343, could not avail themselves of the claim of usury against the appellee.

According to the evidence the mortgage was made directly by Solomon Glass, the purchaser, and wife, to the appellee. The appellee delivered to Emmanuel Gorfine, appellee's attorney, its check for $3,400 payable to the order of Solomon Glass and wife. Gorfine remitted to the appellee the sum of $675, "which was its bonus charge for making the loan of $3,400," and thereafter the appellee collected in the regular way from the appellant on the basis of a loan of $3,400. In addition to this the record shows that the appellee deducted $35 for title examination, $3 for president's fee, $5 for recording and $.68 for revenue stamps, so that the mortgagor paid all the expenses of the loan in addition to the bonus.

It is true that Solomon Glass agreed to purchase this leasehold property for $8,200, and that his liability under that contract was not increased except for interest and dues of the building association, and, if we were not at liberty to make any further inquiry into the transaction than the agreement of purchase shows, there could be no other conclusion than that, because the appellant's obligation under the agreement of purchase has not been increased, the appellee's contention would be sound. But this court, speaking through Judge Parke in the case of *Carozza v. Federal Finance Co.,* 149 Md. 223, 239, said: "Usury is a question of intention, and in searching for that intention no shift or device is permitted to thwart the inquiry, and the real substance of the transaction will determine its nature and not the color or form it has assumed." See cases therein cited and *Haynes v. Commercial Mortgage Co.,* 200 Cal. 609; 53 *A. L. R.* 725, 746; 43 *A. L. R.* 1; 21 *A. L. R.* 789; 27 *R. C. L.* 211.

According to the testimony of Emmanuel Gorfine, who represented the Modern Realty Company and the appellee in the transaction, "Glass had no money, not any money at all to buy this property with. * * * The corporation saw that it could not finance that property without paying large charges for it. He had $100 cash at the time the contract was signed and $400 paid at the time of settlement, which was about four months after this contract was drawn, and $500 was

to be paid six months or so later. They told him very frankly that, if he would pay cash for the property, he would get the property a lot cheaper than he was paying under this contract. He said, 'I can pay the purchase price out in weekly payments rather than take a lump sum reduction in payment of the purchase price.' He said he was a stranger in town. He was working for Joel Gutman and he said he knew nothing about the financing of property in Baltimore and he wanted the corporation to do it for him. (The Court): The result was the corporation did it for him and he undertook to pay $8,200? (The Witness): Yes, the price was considerably less than that."

It appears from this bit of testimony that the purchase price named in the contract was in excess of the amount for which the property could have been purchased if Mr. Glass had had the money to pay cash or the money required for the second mortgage, and that the Modern Realty Corporation would have taken at least $675 less for the property than Glass had contracted to pay. The record shows that the second mortgage for $3,400 was made directly by Glass and his wife to the appellee and, according to its settlement sheet, the whole transaction was carried on in the name of Glass and his wife and not in the name of the Modern Realty Corporation, and by its own records it made a bonus charge of $675 to Glass. The appellee issued its check to Glass and his wife for $3,400 and handed it over to Mr. Gorfine, who in turn gave $675 of the amount back to the building association, so that, out of the check for $3,400, Glass received $2,725 and found himself owing $3,400. In order to further secure itself the appellee took a letter from Mr. Gorfine wherein he agreed, in event of a foreclosure of the mortgage, to "buy in the property for the amount of your mortgage so that your association will not lose anything by reason of such foreclosure."

It may be true that it was necessary for the Modern Realty Company in this way to reduce its purchase price $675 in order to make a sale, and it may also be true that the risk taken by the building association, if it had advanced the full

sum of $3,400, would have been largely in excess of a prudent loan on the property, but that is no defense to a claim of usury. This all exhibits a keen desire on the part of the realty corporation to sell its property, and some eagerness on the part of the appellee to take a chance on making a large profit out of its loan to the appellants. It may be that the loan was hazardous and that the security was not worth the principal amount of the mortgage, but the answer to this is that the appellee was not obliged to take the mortgage, and our only conclusion must be that it wagered that Solomon Glass would carry out his agreement to pay his weekly dues as they matured, and that in the course of time a bad bargain would become a good one and profitable as well.

A different situation might have been presented if the Modern Realty Corporation had executed the mortgage and had discounted it with the building association, assuming that it would have all been done in the exercise of good faith and the transaction was not tainted with fraud or collusion; but the building association in the matter of this mortgage loan chose to do business directly with the appellants, and it can hardly be heard to say now that the deduction of $675 was not taken from the loan and was not a charge in addition to interest at six per cent, as allowed by law, and the legitimate charges connected with the execution of the mortgage.

According to the agreed statement filed herein, if the bonus or fee of $675 should be held to be usurious, then the deficiency chargeable to the mortgagors in the foreclosure proceedings would be $816.23 less than the amount shown by the auditor's account, and, this court being of the opinion that the charge was usurious, the order of the chancellor will be reversed and the case remanded, to the end that the auditor's account may be corrected in accordance with this opinion.

*Order reversed and case remanded, with costs to the appellant.*