CLARENCE M. PLITT *v.* HARRY J. KAUFMAN, ET UX

[No. 143, October Term, 1946.]

608

*Decided June 11, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*T. Lyde Mason, Jr.*, with whom was *J. Dallas Kirwan* on the brief, for the appellant.

*Joseph O. Kaiser*, with whom was *R. Palmer Ingram* on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought by Harry J. Kaufman and Elizabeth M. Kaufman, his wife, of Baltimore County, against Clarence M. Plitt, of Baltimore City, to obtain an injunction and accounting. They allege in their bill of complaint that from time to time from 1932 to 1935, while defendant and his brother, E. Wilbur Plitt, were conducting a wholesale meat business, defendant advanced sums of money to complainants' son, Roland Kaufman, a retail meat dealer, when he was unable to make prompt payments for purchases of meat. They allege that they signed for their son eight promissory notes in the total amount of $11,750, but that $2,750 of this amount was for interest and carrying charges; and that in May, 1935, the son gave four checks totalling $650, for which defendant advanced $520, and the father gave a check for $500, for which defendant advanced $450. They then allege that in 1936 defendant represented that the total amount due on the notes and checks was $6,893.22, and warned the father that he

would institute criminal prosecution against the son for obtaining goods under false pretenses, a charge he knew to be false, unless both parents should sign a confessed judgment note; and that on February 1, 1936, induced by defendant's threat, they gave him a note for $7,500. They further allege that on March 12, 1937, defendant obtained on the note in the Superior Court of Baltimore City a judgment by confession against complainants for the sum of $7,552.50 and attorney's commission of $750 for collection; and on July 3, 1946, he caused a writ of *fieri facias* to be issued on the judgment, whereupon the sheriff levied on their home at 1005 Leeds Avenue, which they own as tenants by the entireties, and advertised it for public sale on July 30. They charge that the judgment includes usurious interest amounting to $3,700, and that the amount actually due with legal interest (after deducting $500 paid for two waivers of the judgment lien, the first given in July, 1937, the other in January, 1939) does not exceed $7,500; and accordingly they tender a certified check for $7,500 payable to the order of the clerk. They pray for an injunction to prevent sale of the property under execution, and an accounting to determine the amount legally due on the judgment. Defendant demurred to the bill, and he is now appealing from an order overruling his demurrer.

From earliest times in history the taking of excessive interest for the loan of money has been regarded with abhorrence. In medieval England, the people, especially the English Church, held the opinion that the payment of any interest for the loan of money was corrupt and sinful. Under laws promulgated in the 10th and 11th centuries, when a man was found to be a usurer, his chattels were forfeited to the Crown and his lands escheated to the lord of the fee. *Gray v. Bennett*, 3 Metc., Mass., 522, 527; *Dunham v. Gould*, 16 Johns., N. Y., 367, 8 Am. Dec. 323. In 1545 Parliament adopted the Usury Act, Statute of 37 Henry VIII, ch. 9, providing that any contract for the loan of

money at a rate of interest higher than 10 per cent. should be wholly void. Likewise in Colonial America, the usury statutes, modeled after a later English Act, Statute of 12 Anne, ch. 16, made all usurious contracts void. In Maryland it was held by the Court of Appeals prior to 1845, in accordance with the English decisions, that a borrower, having a moral obligation to return the amount borrowed and the legal interest, could not obtain relief as a plaintiff either at law or in equity, except upon the condition that he would pay the amount due after deducting the illegal interest, but when in court as a defendant he could relieve himself from the entire contract because the statute had declared it utterly void. In 1845 the Legislature enacted that any person guilty of usury shall forfeit all the excess above the real sum actually loaned and the legal interest on such sum, which forfeiture shall enure to the benefit of any defendant who shall plead usury and prove the same. Laws of 1845, ch. 352, Code, 1939, art. 49, sec. 4. The effect of the Act was to compel the borrower who, as defendant, sought to extricate himself from a usurious contract to do exactly what he was before obliged to do when he asked to be protected against it in the position of a plaintiff.

This Court has held that no device or subterfuge of the lender will be permitted to shield him in taking more than the legal interest on a loan. In whatever part of the transaction usury may lurk, or in whatever form it may take, or under whatever guise the lender may attempt to evade the law, the court will seek to ascertain what the contract actually was between the parties and give the debtor relief. *Andrews v. Poe*, 30 Md. 485; *Brenner v. Plitt*, 182 Md. 348, 34 A. 2d 853. Where a creditor exacts of a debtor, as a condition of the loan, a sum in addition to the lawful interest, whether designated as a bonus, commission, or carrying charge, or by any other name, the transaction is tainted with usury, except where the sum so exacted, when added to the stipulated interest, does not exceed interest

at the maximum lawful rate on the principal sum of the loan. *Walter v. Foutz,* 52 Md. 147; *Bowdoin v. Hammond,* 79 Md. 173, 28 A. 769; *Glass v. Third National Building & Loan Ass'n of Baltimore City,* 156 Md. 26, 143 A. 587. While no cause of action is maintainable in this State in any case where the evidence of indebtedness has been settled for by the obligor, the Legislature has expressly provided that usury shall be a cause of action in all cases where the settlement is secured by or connected with a renewal in whole or in part of the original indebtedness. Laws of 1912, ch. 835, Code, 1939, art. 49, sec. 6. So, where an obligation has become affected with usury, the taint of illegality follows the indebtedness as long as it may be traced, and any renewal of a usurious obligation including usurious interest remaining unpaid is itself usurious, even though in itself it bears no more than legal interest. *Bridge v. Hubbard,* 15 Mass. 96, 8 Am. Dec. 86.

At common law a person who has paid excessive interest may recover it in an action for money had and received. The law is established in this State that a borrower in a usurious contract is not in *pari delicto* with the lender, and hence if the borrower has paid money upon a usurious contract, he may recover at law or in equity the excess paid beyond the principal and lawful interest, but no more. *West v. Beanes,* 3 Har. & J., Md., 568; *Grinder v. Nelson,* 9 Gill, Md., 299, 52 Am. Dec. 694; *Scott v. Leary,* 34 Md. 389; *Horner v. Nitsch,* 103 Md. 498, 63 A. 1052. Usury does not of itself constitute a ground of equitable jurisdiction. Very often the form of a usurious obligation is such that an action at law is adequate to prevent its enforcement. But where a usurious instrument is a cloud upon the title to land, or where an accounting is necessary to prove the usury, or where there are other circumstances that prevent an adequate remedy at law, equity may interpose its aid to enjoin the enforcement of the contract. *Minturn v. Farmers' Loan & Trust Co.,* 3 N. Y. 498; *Allerton v.*

*Belden,* 49 N. Y. 373, 378. Thus a court of equity will enjoin the sale of land under execution on a judgment entered in a court of law by confession upon a promissory note given for a usurious consideration, upon payment of the real amount of the debt with legal interest.

Defendant contends that complainants cannot invoke the aid of equity because the usurious dealings were not with complainants, but with their son. It has been held that a third person who has assumed for a valuable consideration to pay a usurious debt cannot avail himself of the defense of usury, for he is not concerned with the original consideration for the debt. *Barney v. Tontine Surety Co.,* 131 Mich. 192, 91 N. W. 140. It has been held that if one buys property and agrees to take up a note affected with usury as a part of the purchase price, he cannot maintain the defense of usury against the note, because as to him the obligation is not for the loan of money. *Doster v. English,* 152 N. C. 339, 67 S. E. 754. But that rule is not applicable where the person who assumes the obligation with the consent of all parties concerned is merely substituted for the original debtor. *Charles S. Riley & Co. v. W. T. Sears & Co.,* 154 N. C. 509, 70 S. E. 997; 66 C. J., Usury, sec. 345. Here the bill alleges that the father signed all of the notes as well as one of the checks. There is no question that the accommodation maker of a promissory note has the right to set up against the lender the defense of usury between the lender and the borrower. *Rodecker v. Littauer,* 8 Cir., 59 F. 857.

Defendant criticizes the issuance of the preliminary injunction on the ground that complainants failed to file exhibits with the bill of complaint. It is a fundamental rule that in an application for the summary remedy of injunction the complainant must make a full and frank disclosure of all the facts of the case. *Maas v. Maas,* 165 Md. 342, 346, 168 A. 607. General Equity Rule 4 provides that no injunction shall be issued

until the originals or certified copies of instruments of record, and verified copies of all documents not of record, necessary to show the character and extent of the complainant's interest in the suit shall have been filed, if in possession of the complainant or accessible to him; if not, that fact shall be stated in the bill or petition. Code, 1939, art. 16, sec. 164. In this case the bill avers that the note upon which the judgment was entered is not available to complainants, as Plitt withdrew it from the office of the Clerk of the Superior Court in 1938 and has not returned it. The bill also avers that some of the prior notes and checks are not available at this time, but they will be produced at the hearing. However, the bill, which is verified by the affidavits of complainants, recites the date, the amount, and the maker of each note, as well as the interest and carrying charge demanded for each. It also describes each check, giving the date, the amount, the carrying charge, and the name of the bank on which it was drawn. Thus the bill contains the information regarding the notes and checks necessary to enable defendant to prepare his answer. The copy of the docket entries should have been exhibited with the bill to show that defendant had obtained judgment against complainants. *Conolly v. Riley,* 25 Md. 402, 417; *Miller, Equity Procedure,* sec. 583. The notes and checks have evidential value, but they are not absolutely essential even for issuance of the injunction prayed by the bill. The notes and checks are links in the chain of proof in the case. The amount of usurious interest does not appear from them, and the illegality of the transactions would not be any more apparent if the notes and checks had been produced. The usury, if any, cannot be determined without the aid of extrinsic evidence. Not all written documents which are items of proof as links in the chain of evidence are necessary exhibits. *Sears v. Barker,* 155 Md. 323, 141 A. 908; *Spangler v. Dan A. Sprosty Bag Co.,* 183 Md. 166, 175, 36 A. 2d 685, 689.

The final question is whether complainants are estopped from invoking the aid of equity on account of laches. Defendant contends that if complainants wanted to dispute the amount of the judgment rendered against them in 1937, they should have done so long before 1946. In applying the doctrine of laches, the court of equity, recognizing that the policy of the law is to give repose to titles, refuses to grant relief to a claimant who has slept on his rights for an unreasonable length of time, thereby allowing his claim to become stale and causing prejudice to the adverse party. Equity takes the view that such manifest neglect constitutes an implied waiver arising from a knowledge of the conditions and an acquiescence in them. *Wilhelm v. Caylor,* 32 Md. 151, 154; *Demuth v. Old Town Bank,* 85 Md. 315, 326, 37 A. 266, 268, 60 Am. St. Rep. 322; *Hoffa v. Hough,* 181 Md. 472, 30 A. 2d 761; *Boehm v. Boehm,* 182 Md. 254, 269, 34 A. 2d 447. In determining what will constitute laches so as to bar relief in equity, the court has no inflexible rule as to length of time, such as in the case of limitations, but must decide the question from all the facts and circumstances of each particular case. It is specifically held that a debtor, in order to maintain a suit to avoid usurious interest, must file his bill within a reasonable time. *Scott v. Leary,* 34 Md. 389, 398. In the case before us complainants recognized the lien of the judgment in July, 1937, and again in January, 1939, when defendant gave them waivers of the lien on two of their properties; but, according to the allegations of the bill, they allowed nine years to pass before they made any objection to the judgment. No explanation was offered for the delay. In the absence of any averment to account for their inaction throughout that period, a clear case of laches is apparent on the face of the bill, and therefore the chancellor should have sustained defendant's demurrer. *Boggs v. Dundalk Realty Co.,* 132 Md. 476, 104 A. 45.

However, complainants have informed the Court that defendant knew for some years that they disputed the

616

judgment on the ground of usury, and since the filing of the bill they have come into possession of a photostatic copy of a letter which he wrote to them on February 2, 1937, stating the understanding with which the notes were signed and the judgment was to be entered. They declare that this letter will satisfactorily explain why they delayed so long in bringing the suit. In view of these representations we will remand the case with direction to the Court below to grant leave to complainants to amend their bill by explaining the delay in bringing the suit. We intimate no opinion as to what kind of explanation might be sufficient to make the bill good against demurrer.

> *Order reversed and case remanded for the passage of an order in accordance with this opinion, with costs to appellant.*