501 A.2d 458

**Sylvester T. CONER, et ux.**

**v.**

**MORRIS S. BERMAN UNLIMITED, INC.**

**No. 354, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 11, 1985.

Lynda V. Mathis, Baltimore, for appellants.

Donald P. Mazor (Lewis G. Wilson on brief), Baltimore, for appellee.

Argued before WILNER, BISHOP and BLOOM, JJ.

WILNER, Judge.

In February, 1983, appellants were in financial distress; the mortgage on their home was in default. To obtain the funds necessary to cure that default, they made a loan from appellee, Morris S. Berman Unlimited, Inc., giving appellee, as security for the loan, a second mortgage on their home.

The actual transaction was as follows. The loan was for $2,500. From that sum, appellee deducted $1,229 for fees and expenses of one kind or another, it paid $1,096 to the first mortgagee on appellants' behalf, and it gave the balance of $175 to appellants. A finance charge of $672, representing interest on the $2,500 at the rate of 24% per annum for two years, was added to the mortgage debt so that, for the net proceeds of $1,271 ($1,096 + $175), appel-

lants obligated themselves for $3,172, to be paid in 24 monthly installments of $132. Among the fees and expenses deducted from the $2,500 was a "Broker Fee" of $200, ultimately paid to an entity known as Mortgage Masters, and an insurance premium of $213. The premium was for a $25,000 fire and extended coverage policy sold to appellants by Insurance Masters, an agency owned by Morris S. Berman.

Appellants defaulted after making six scheduled payments, whereupon appellee filed this foreclosure action. On January 19, 1984, the property was sold; Morris S. Berman and his wife Leslie G. Berman, individually, purchased the property for $2,250, subject to the existing first mortgage of $14,097.

Appellants excepted to ratification of the sale. As grounds, they claimed that (1) the mortgage was obtained by fraud and misrepresentation, (2) they were not in default at the time of the foreclosure decree, (3) the purchase price was "grossly inadequate," indicating "a want of reasonable judgment and discretion, misconduct, fraud and unfairness" on the part of the Bermans, and (4) the conduct of Morris Berman, as agent for Morris S. Berman Unlimited, Inc. in obtaining the secondary mortgage constituted "unfair and deceptive trade practices in contravention of public policy."

The matter was referred to an equity master who, after an evidentiary hearing, filed a report and then a supplemental report which, together, recommended denial of ratification. The master expressly rejected most of the grounds articulated by appellants in their exceptions. She found no evidence of fraud or misrepresentation on the part of the Bermans and no evidence of improper conduct in the sale of the property. She rejected the contention that the sale price was inadequate.

The master concluded, however, that the transaction was in violation of the State Secondary Mortgage Law (Md.Code Ann.Com.Law art., §§ 12–401—12–415) and the State Loans-Finder's Fees Law (Com.Law art., §§ 12–801—12–

809), and that the monetary sanctions assessable for those violations exceeded the amount due under the mortgage. It was on that basis that she concluded that appellants were not in default. *See Kramer v. McCormick*, 59 Md.App. 193, 474 A.2d 1346 (1984), where we held that

> "equity will permit a foreclosure sale to be set aside or enjoined when there is no debt due under the mortgage.... [W]hen offsetting penalties due the debtor from the creditor for that very loan exceed the debt itself, it would be absurd as well as inequitable to permit a homeowner to lose his home for a debt that was not due."

*Id.* at 202, 59 A.2d 1346.

The violations found by the master were limited to two aspects of the transaction—the insurance required by appellee and the $200 finder's fee charged by Mortgage Masters, allegedly a sole proprietorship owned by Leslie G. Berman.

At the time the mortgage was made, appellants' home was insured for $16,000; the balance on the first mortgage was about $14,000. The master agreed that the existing insurance was not sufficient to protect appellee's interest and found no impropriety in appellee's requiring the additional $25,000 insurance. Nor did she find anything wrong in appellee's supplying that additional insurance through the agency owned by Morris S. Berman. The violation was attributed solely to the fact that the new policy insured not only the dwelling but also appurtenant structures, unscheduled personal property, additional living expense, and personal liability. The property in question had no appurtenant structures, and the other perils, she concluded, were of no legitimate concern to appellee. Without any evidence as to whether the inclusion of those additional coverages involved any extra cost to appellants, she found the policy to be "clearly unreasonable" and in contravention of Com.Law art., § 12–410(c)(1), requiring that "the type of insurance coverage [required by a second mortgage lender] shall bear a reasonable relation to the existing risk of loss."

The finder's fee problem stemmed from Com.Law art., § 12–804(e), which provides that "[a] mortgage broker may not charge a finder's fee in any transaction in which he is the lender, a partner of the lender, or is a part owner of the lender" and § 12–808, which prohibits an insurance agent from collecting a finder's fee where he also acts as an insurance agent in connection with the transaction.

The evidence showed, and the master found, that the mortgage lender was appellee, Morris S. Berman Unlimited, Inc., a close corporation in which Morris S. Berman was the sole owner, director, and officer and in which Leslie G. Berman had no direct interest.[1] In a footnote to her report, however, the master concluded that "[t]he total control of Morris S. Berman as sole shareholder and director of Morris S. Berman Unlimited, Inc. is sufficient to pierce the corporate veil of this close corporation under the terms of this statute." On that basis, she found Mr. Berman, individually, to be the lender in the transaction.

The broker, to whom the $200 broker's fee was paid, was Mortgage Masters, which, as noted, was supposedly a sole proprietorship owned by Leslie G. Berman. The evidence showed, however, that (1) appellants had no dealings with Mrs. Berman and had indeed never met her in connection with the transaction, (2) the actual "Contract To Obtain Mortgage Loan," under which appellants agreed to pay the 8% fee "at such time as MORTGAGE MASTERS obtains a lender who makes a commi[t]ment," was signed for Mortgage Masters by Morris S. Berman, and (3) Morris S. Berman Unlimited, Inc. and Mortgage Masters (and the insurance agency supplying the insurance) all operated from the same location—4010 Glengyle Avenue—and had the same telephone number. Mr. Berman acknowledged that "he acts as general manager of Mortgage Masters whenever his wife, Leslie Berman, is out of the office...."

---

1. From the deposition of Mr. Berman, it appears that no stock was ever actually issued.

Upon that evidence, the master found that Morris and Leslie Berman "had a common interest in the success of Mortgage Masters." That finding, she believed, had significance because of the definition of "mortgage broker" in § 12–801(e) as a "person" who arranges or assists a borrower in obtaining a loan, coupled with the definition of "person" in § 12–801(f) as including "an individual, corporation, business trust, estate, trust, partnership, association, *two or more persons having a joint or common interest,* or any other legal or commercial entity." (Emphasis added.) From this, she concluded that Morris S. Berman, individually, was also the broker in the transaction, and that he therefore "was acting in a dual capacity as broker/lender for this transaction." That "dual capacity," she further found, also extended to appellee's provision of the insurance. It was on that basis that she found a violation of § 12–804(e) and § 12–808.

Appellee excepted to the master's reports, averring that (1) the master erred in construing § 12–801(e) and (f) so as to make Morris S. Berman a mortgage broker, and thus in finding that he acted as both broker and lender, and (2) the master further erred in finding that the insurance coverage was unreasonable in that there was no evidence that the premium charged for that policy was more costly than a bare fire insurance policy. It asked for the opportunity to present evidence on that latter issue and requested that the court accept an electronic recording of the proceedings before the master as the transcript. Having won the battle, if not most of the skirmishes, appellants declined to file cross-exceptions.

Appellee's exceptions were heard by the court on November 7, 1984. When asked whether it had received a transcript of the master's proceeding, the court twice replied in the affirmative: "I got the transcript, I read the whole thing." The court must have been referring to the master's report, for it is clear that no typewritten transcript was ever prepared. It appears, moreover, that the court did not have, and certainly did not listen to, any electronic record-

ing of the master's proceeding.[2]  Evidence was presented by appellee showing that where extended coverages for appurtenant structures, personal property, living expenses, and personal liability are included in a fire insurance policy, no extra charge is made for those coverages.  Aside from the reception of that evidence, the hearing consisted primarily of argument as to the validity of the assumptions, findings, and conclusions made by the master.  On November 20, 1984, the court entered a brief order sustaining appellee's exceptions and ratifying the sale.  No reasons were given for the court's decision.  This appeal is from that order.

Appellants make a number of procedural arguments that we may dispose of quickly.  They complain that appellee's exceptions were too general, that the court erred in taking the additional evidence concerning the extended insurance coverage, and that it further erred in proceeding without a transcript of the proceeding before the master.  We think that the exceptions filed by appellee were sufficiently "particular" to comply with Md.Rule 2–541(h); neither appellants nor the court had any difficulty understanding the nature of appellee's complaints.  Appellee made clear in its exceptions what additional evidence it wanted to produce, why that evidence was relevant, and why it had not been presented to the master.  The court did not abuse its discretion in allowing that evidence to be presented to it.

Appellants' complaint about the lack of a transcript is a valid one.  Md.Rule 2–541(h) makes clear that, unless the parties agree to a statement of facts or the court accepts an electronic recording in its stead, the exceptant must cause to be prepared and transmitted to the court a transcript of so much of the testimony taken before the master as is necessary to rule on the exceptions.  That

---

**2.**  At one point, when *appellee* indicated surprise that the court had "a typed transcript," the court responded, "I got the transcript.  I am not going to listen to any four days of testimony."

clearly was not done in this case which, ordinarily, would be sufficient ground, of itself, to vacate the judgment and remand for a further proceeding. We think that here, however, there is an independent ground for reversal that is more important. Nearly all of the argument before the court concerned the master's construction of the relevant statutes and her other legal conclusions. No one asked to see, or attempted to refer to, the transcript that the court said existed or appeared to be prejudiced by its absence.

■ Woven in and among these procedural arguments is the more substantive contention that the master really was correct in her findings and conclusions and that the court erred in sustaining the exceptions. As to that, appellants are at least partly correct. They are incorrect as to whether the inclusion of the ancillary coverages amounted to a violation of § 12–410(c)(1). Given the uncontradicted evidence before the court that the ancillary coverage in the new insurance policy cost appellants nothing, the court did not err in rejecting the master's finding that the inclusion of those coverages made the policy unreasonable. Because appellants did not except to the master's conclusion that the base *amount* of insurance sold to them—$25,000—was not unreasonable, that issue was not before the Circuit Court and is not before us.

We turn now to the question of Morris Berman's status, and that requires a look at both the Secondary Mortgage Law—in particular § 12–405—and the Finder's Fee law.

The Secondary Mortgage Law was first enacted in 1967 for the purpose of licensing and regulating persons "in the business of negotiating secondary mortgage loans." 1967 Md.Laws, ch. 390. With certain enumerated exceptions— most notably banks, savings and loan associations, and insurance companies—the law requires persons engaged in that business to be licensed by the Bank Commissioner and restricts the fees and charges that both licensees and other

lenders may collect.[3]  As part of those restrictions, the law flatly prohibits a lender from collecting from a borrower "any ... finder's fee ... for obtaining, procuring, or placing a loan."  Com.Law art., § 12–405(a).  If there is a finder's fee due on the transaction, it must be paid by the lender.  Sec. 12–406(a).

The Finder's Fee law (Com.Law art., §§ 12–801—12–809) was enacted in 1979 for the purpose of "regulating the charging of finder's fees by mortgage brokers...."  1979 Md.Laws, ch. 351.  It also evidences an intent by the General Assembly to divorce mortgage brokering from mortgage lending.  Section 12–803 prohibits a mortgage broker from being a director, officer, or employee "of any lender where he places a loan," and § 12–804(e) prohibits a mortgage broker from "charg[ing] a finder's fee in any transaction in which he is the lender, a partner of the lender, or is a part owner of the lender."

■ These provisions, if not actually a part of the State usury law, are clearly akin to it.  *They are intended to prohibit a lender from collecting more than the interest or other remuneration that the law allows by collecting as well a finder's fee for simply introducing himself to the borrower.*  Because of the relationship of this prohibition to the usury law, we think that the transaction in question must be viewed in the light of sentiments first expressed by the Court of Appeals in *Andrews v. Poe,* 30 Md. 485 (1869), and repeated a number of times since, namely, that

---

**3.** The licensing and regulatory provisions were enacted together and were initially placed in art. 66 of the Code.  As part of Code Revision, however, they were split.  The licensing provisions are now found in Md.Code Ann.Fin.Inst. art., §§ 12–301—12–321.  The regulatory or credit provisions are found in Com.Law art., §§ 12–401—12–415, and are broader in scope than the license provisions.  Section 12–401 makes clear that they apply to both licensees and to persons who make a secondary mortgage loan but are exempt from the licensing requirements.  This is of no significance in this case, as appellee is clearly subject to both the licensing and the credit provisions.

"[N]o device or subterfuge of the lender will be permitted to shield him in taking more than the legal interest on a loan. In whatever part of the transaction usury may lurk or in whatever form it may take, or *under whatever guise the lender may attempt to evade the law, the court will seek to ascertain what the contract actually was between the parties and give the debtor relief.*" (Emphasis added.)

*See Plitt v. Kaufman,* 188 Md. 606, 611, 53 A.2d 673 (1947); *Hoffman v. Key Fed. Sav. & Loan,* 286 Md. 28, 34, 416 A.2d 1265 (1979); *Brenner v. Plitt,* 182 Md. 348, 356, 34 A.2d 853 (1943).

The broker in this case was Mortgage Masters; but who was Mortgage Masters? It is alleged to be a sole proprietorship of Leslie Berman, but it is apparent that Mrs. Berman had nothing whatever to do with procuring the loan for appellants. If the question were asked, what did Mrs. Berman do to earn a $200 finder's fee, the answer would have to be, "nothing." If the question were then asked, who on behalf of Mortgage Masters *did* do something to earn a finder's fee, the answer would have to be either "no one" or "Morris S. Berman." Whatever services Mrs. Berman may otherwise perform for Mortgage Masters, it is clear beyond contradiction that, in this case, she performed none, and that Mr. Berman, using Mortgage Masters as a conduit, extracted a finder's fee for doing no more than receiving appellants' application and passing it from one of his hands to the other.

■ It is not necessary to pierce corporate veils or engage in statutory semantics to see this transaction for what it was. Mr. Berman is entitled to operate as a licensed lender in corporate form, and Mrs. Berman is entitled to operate as a licensed broker on her own. What Mr. Berman cannot do, however, is to use Mrs. Berman's proprietorship to extract a finder's fee where no arms-length brokerage service is actually provided or, if acting as a broker, to place a loan

with a company that he owns. That is what the evidence shows he did.

In putting together this transaction, Mr. Berman necessarily acted as an agent, on the one hand, for his corporation (appellee) and, on the other, for Mortgage Masters. We shall assume, in the absence of contrary evidence, that he had the authority to so act. Each principal, then, is responsible for the actions taken by him on its behalf.

The $200 broker's fee was deducted by appellee—the lender—from the loan proceeds. It was therefore "collected" by appellee, even if for the benefit of Mortgage Masters. As noted, the Secondary Mortgage Law, Com.Law art., § 12–405 provides that a lender "may not collect from the borrower" a finder's fee. In context, we think that prohibition extends not just to retaining the fee, but to the actual collection of it. See, for example, § 12–405(b), permitting a lender to "collect" fees paid to public agencies for recording the mortgage, and note the provision in § 12–406(a) requiring any finder's fee to be paid by the lender. For this violation, § 12–413 requires that the lender forfeit at least all "interest, costs, or other charges with respect to the loan."

Similarly, the Finder's Fee law, § 12–807, provides that a mortgage broker who violates that law shall forfeit the greater of $500 or three times the amount of finder's fee collected, which, in this case would be $600.

The master concluded that, because of the forfeiture of interest, costs, and other charges, the amount due on the mortgage was limited to that part of the loan proceeds applied on the first mortgage or paid directly to appellants, which she calculated to be $1,235.[4] Against that, she de-

---

**4.** The master may have made an arithmetic mistake. She found that $1,059 was applied to the first mortgage. The closing documents show that $1,095 was so applied. The $1,235 figure also does not account for any principal reduction as a result of the six payments made by appellants.

ducted three times the amount of insurance premiums collected ($961) and three times the amount of finder's fee ($600). That is what led her to conclude that nothing was due to appellee.

In light of our conclusion that the inclusion of ancillary coverages in the insurance policy was not unreasonable, the master's ultimate finding that nothing was due may not be valid.[5] It is clear, however, that her determination that the $200 finder's fee was improperly collected was correct, and that the court erred in sustaining appellee's exceptions with respect to that determination. We shall therefore vacate the judgment entered below and remand the case for redetermination of the amount, if any, due on the mortgage. If, after applying the appropriate statutory sanctions, there is, indeed, some amount due, the sale should be ratified and the amount found to be due should be stated in the auditor's account. If it turns out that, because of statutory sanctions, no amount is due, the sale should not be ratified.

JUDGMENT VACATED; CASE REMANDED
TO CIRCUIT COURT FOR BALTIMORE
CITY FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION;
APPELLEE TO PAY THE COSTS.

---

**5.** As noted earlier, the master found that Mr. Berman's status as broker would also constitute a violation of Com.Law art., § 12–808, although it does not appear that she applied any additional sanction for that violation.