## A. GRAHAM BOGGS, Jr.,

*vs.*

## DUNDALK REALTY COMPANY, Incorporated.

*Fraud: equitable relief; pleading; allegations of bill, and exhibits. Laches: facts of each case. Specific performance: contract must be definite.*

Where a petition claiming equitable relief makes allegations of fraud, but sets out no facts and has with it no exhibits filed to show any sufficient basis for any charge of fraud, the petition is demurrable.                                    p. 481

What constitutes laches in equity is not a hard and fast rule of specific length of time, but is dependent upon the particular facts of each case.                                    p. 481

In a petition for a relief from fraud, an unexplained delay of three years is good ground for the defense of laches.    p. 481

A decree for specific performance can be granted only for the enforcement of a definite agreement that is certain in all its parts.                                    p. 481

*Decided April 3rd, 1918.*

Appeal from the Circuit Court for Baltimore County. In Equity.   (Duncan, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar Allan Poe,* for the appellant.

*Robert H. Carr* (with whom was *T. Scott Offutt* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This case was begun by the filing of a petition in the nature of a bill of complaint, to which a demurrer was interposed. The demurrer was sustained and petition dismissed in the Circuit Court for Baltimore County, sitting in equity.

The sustaining of the demurrer and the dismissal of the petition was on the 9th of July, 1917. On the 7th of September, 1917, and thus after the order had become enrolled, upon the petition of the complainant, the order of July 9th was revoked, and leave granted to file an amended bill of complaint, and on the day following, according to the docket entries, an appeal was taken to this Court from the decree previously entered in Baltimore County. At the time when the appeal was so taken, there was nothing from which the petitioner could appeal. On September 20th the order passed on the 7th of the month was rescinded, the effect of which was to leave the case in the condition it was prior to the order of the 7th of September. The case will accordingly be considered as though the order of September 7th had never been passed.

There appears in the record an amended bill, but the order of July 9th gave no leave to amend the bill, but dismissed the petition, and the amended petition bears this endorsement: "This paper was filed by the Clerk without leave of Court being first had and obtained," signed by Judge McLane. For the purposes of the case, therefore, this so-called "amended petition" will not be considered.

The original petition was drawn with no attempt at compliance with the general equity rules. It alleges in substance that on the 1st of August, 1913, the appellee gave to the appellant an option or right of purchase for a parcel of ground in Baltimore County of approximately twenty-nine acres, situate at Dundalk, for which the petitioner was to pay $500 an acre, and make certain payments on account of the purchase price of the land in accordance with the agreement. Exhibit A, filed with the petition, purports to be a copy of that agreement. When that is examined it appears to be an agreement between the Dundalk Realty Company and the Branch Real Estate Company, per A. S. J. Jakeman, and in which the name of the petitioner nowhere appears. The agreement specifically provides that the option given by it is not to run over six months, and that in order to keep it alive $100 is to be paid on September 1, 1913; $200 to be paid on October 1st, 1913; $300 on November 1st, 1913, and that any money paid on account of the option is to be credited on the purchase price of the land, if a sale is effected under the option.

The petition further sets forth that $100 was paid on September 1st, 1913, an offer made to pay the Realty Company $200 on the first of October, according to the terms of the option, but that the Dundalk Company declined to receive the same, and that several attempts were subsequently made to induce the Dundalk Company to accept the $200, but were declined, and that thereafter the company endeavored to cancel its contract, on the ground that the petitioner had not made the payments as agreed.

On the 24th of October, 1913, an agreement was entered into between the Dundalk Company and Albert S. J. Jakeman, trading as the Branch Real Estate Company, reciting the agreement of August 1st, and that Jakeman had failed to comply with the terms thereof, so that it had become null and void; and that the payment of $100 had become forfeited to the Realty Company by reason of the non-compli-

ance with the conditions named in the agreement of August 1st.

This paper, filed as Plaintiff's Exhibit B, gives an option to Jakeman to purchase the twenty-nine acres referred to in the agreement of August 1st for the sum of $22,000, and contains provisions by which Jakeman should have the right to sell off the land in small lots, in accordance with a survey and division of the lands which had been made at the instance of Jakeman, and from the purchase money paid for such lots sold, $650 was to be paid to secure the surrender by the tenant then in possession, certain amounts to the Dundalk Realty Company, which was thereupon to secure as to the lots so sold and paid for releases of two mortgages which were upon the land, and the entire purchase price of $22,000 was to be paid before July 1st, 1914.

The party of the second part to this agreement, Jakeman, trading as the Branch Real Estate Company, was to lay out and grade streets in twenty and eighteen-one-hundredths acres of the land, and to cause to be laid cement sidewalks upon said streets. This agreement was not to be assignable without the written consent of the Dundalk Company. The agreement was signed by the Dundalk Realty Company, by its President, and Albert S. J. Jakeman, trading as "Branch Real Estate Company."

A month and a day later, namely, November 25th, 1913, this agreement was endorsed, "Cancelled"; A. Graham Boggs, Jr., and Albert S. J. Jakeman. This is the first time that Mr. Boggs appears in the transaction. What his interest was is nowhere set out. On the same day, November 25th, Messrs. Jakeman and Boggs, for themselves and the Branch Real Estate Company, signed a release declaring both of the agreements, that of August 1st and October 24th, null and void, and releasing the Dundalk Realty Company from any and all claim arising out of said agreements, and on the day following another release was executed by Jakeman and Boggs reciting the failure of the Branch Real

Estate Company to comply with the terms of the agreement, declaring the agreements null and void, and releasing any claim that they might have against the Dundalk Realty Company.

The petition further recites that these releases were given upon an agreement to execute a new contract later in the day than the time when the releases were signed, but that such contract had never been executed, and apparently not even prepared.

There is no allegation or suggestion as to what the terms of the new contract were to be, nor anything from which an inference could be drawn with regard to the terms or conditions to be included in it.   The petition further sets out that the Dundalk Realty Company has collected large sums of money on account of sales of the land made by the petitioner through its agent, which sums the petitioner believes would be more than sufficient to pay any balance due on the purchase price; and that the petitioner has made frequent demands for an accounting and been refused, and it concludes with the following prayers:

"1.   That an order may be passed by this Court requiring the said Dundalk Realty Company to give to your petitioner an accounting of the moneys received on account of the purchase price of the said land as set forth in the above petition.

"2.   That the said Dundalk Realty Company be enjoined from disposing of the said land in disregard of your petitioner's rights.

"3.   That the said Dundalk Realty Company be ordered to convey the said land to your petitioner by a good and merchantable title.

"4.   And that your petitioner may have such other and further relief as his case may require."

The petition in the case was filed on the 18th of December, 1916, more than three years after the releases given by Boggs and Jakeman to the Dundalk Company.   The argu-

ment is that these releases were procured by fraud, and the allegation in the petition is that the Dundalk Company endeavored to commit a fraud upon the petitioner, but there are no facts set forth in the petition and the exhibits filed with it to show a sufficient basis for any charge of fraud, and the petition was clearly demurrable. *American Surety Co. v. Spice,* 119 Md. 1.

Nor is there any attempt to explain away the long lapse of time between the execution of the releases and the institution of this suit. What constitutes laches is not a hard and fast rule of a specific length of time, as in the case of limitations, but is dependent in each case upon the facts of the particular case. *Warburton v. Davis,* 123 Md. 231. A lapse of several years may in some cases be free from objection on this ground; in others a much shorter time, as in *Whiteford v. Yellott,* 104 Md. 191, where a delay of two years was held to bar the plaintiff from recovery, and there are cases where an interval of days has been held to constitute laches. In the present case the plaintiff alleges that he was deceived and defrauded, yet he permits more than three years to pass before he attempts to enforce his rights, if he had any. No explanation is offered for the delay, and in the absence of any attempt to account for the inaction during this period, a clear case of laches is apparent on the face of the petition.

If this could be regarded as a bill for specific performance, it would be on that ground also open to demurrer. That relief can be granted only for the enforcement of a definite agreement, certain in all its parts. The allegations of the bill in this case are, that the agreements of August and October, 1913, were both to be set aside for the purpose of entering into a new agreement; but the terms of such new agreement are not indicated in any particular. To a case of this character the language of ALVEY, C. J., in *Coleman v. Applegarth,* 68 Md. 21, is entirely applicable: "The contract set up is not one of sale and purchase, but simply for the option

to purchase within a specified time and for a given price. It was unilateral and binding upon one party only. There was no mutuality in it, and it was binding upon A. only for the time stipulated for the exercise of the option. After the lapse of the time given there was nothing to bind him to accept the price and convey the property, and the fact that this unilateral agreement was reduced to writing added nothing to give it force or operative effect beyond the time therein limited for the exercise of the option by the plaintiff. * * * When the time limited expired the contract was at an end and the right of option gone, if that right had not been extended by some valid, binding agreement that can be enforced. This would seem to be the plain dictate of reason upon the terms and nature of the contract itself." See to the same effect *Maughlin* v. *Perry,* 35 Md. 352.

No error can be imputed to the Court below for its ruling in this case, and the order appealed from will, therefore, be affirmed.

*Order affirmed, with costs to the appellee.*