656 A.2d 751

Robert C. SCHAEFFER

v.

ANNE ARUNDEL COUNTY et al.

No. 76, Sept. Term, 1994.

Court of Appeals of Maryland.

April 7, 1995.

**76**

John R. Greiber, Jr. (Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for appellant.

David A. Plymyer, Deputy County Atty. (Judson P. Garrett, Jr., County Atty., on brief), Annapolis, Avery Aisenstark (Charles A.P. Christianson, Adelberg, Rudow, Dorf, Hendler & Sameth, LLC, on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

This case involves a challenge to the procedures followed in connection with the enactment of an Anne Arundel County ordinance that became effective July 1, 1989. Robert C. Schaeffer, the appellant, is a taxpayer and resident of Anne Arundel County. He seeks to have the ordinance declared void *ab initio* due to an alleged defect in the timing of notices published in *The Capital.* The issues presented are whether Appellant's claim is barred by laches, whether Anne Arundel County complied with the required notice procedures, and whether voiding the ordinance would violate the Contracts Clause of the United States Constitution.

## I

On September 10, 1993, Schaeffer filed a complaint for declaratory judgment and injunctive relief in the Circuit Court for Anne Arundel County, challenging the enactment of Anne Arundel County Bill No. 36–89 ("the ordinance"), as it amended certain provisions of the Anne Arundel County Retirement Plan for Appointed and Elected Officials.[1] In its answer, Appellee Anne Arundel County asserted, *inter alia,* laches as an affirmative defense.

---

1. Bill No. 36–89 made significant changes to the Anne Arundel County Retirement Plan for Appointed and Elected Officials, including reducing the normal retirement age from sixty to fifty, increasing the minimum pension benefit, and increasing the annual benefit accrual rate for appointed officials from 2% to 2.5% of final earnings for the first twenty years of credited service. Bill No. 36–89 also enhanced the benefits for participants in the Anne Arundel County Employee's Retirement Plan, which is the pension plan for all County employees other than appointed and elected officials, police, correctional officers and firefighters. Except for the increase in the minimum pension benefit for appointed and elected officials, the enhancements in the benefits under both plans were made applicable to participants who retired on or after July 1, 1989.

Joseph J. McCann, another appellee, filed a motion to intervene, asserting that (1) he, together with other, similarly situated beneficiaries of the Anne Arundel County Retirement Plan for Appointed and Elected Officials, possessed a material and cognizable interest in the outcome of the case;[2] and (2) his interests were substantively distinct, if not adverse to, the interests of both Schaeffer and the County. The trial court granted McCann's motion to intervene as a party defendant. In his answer, McCann also asserted laches as an affirmative defense.

All of the parties filed motions for summary judgment. After a hearing, Judge Eugene M. Lerner granted summary judgment in favor of the County and McCann, ruling that laches barred Schaeffer's action.

Schaeffer appealed that decision to the Court of Special Appeals. Before consideration of the case by the intermediate appellate court, we issued a writ of certiorari on our own motion to consider the following questions: (1) whether Schaeffer's claims were barred by laches; (2) whether the County complied with the notice requirements of Maryland Const. Art. XI–A, § 3; and (3) whether voiding the ordinance would violate the Contracts Clause of the U.S. Constitution. We shall answer the first question in the affirmative and affirm the judgment of the Circuit Court for Anne Arundel County.

## II

Schaeffer contends that the County Council failed to publish notice of the proposed legislation as mandated by Art. XI–A, § 3, applicable to charter counties such as Anne Arundel, and that such a failure renders the legislation unconstitutional and void *ab initio*. Art. XI–A, § 3 provides that a chartered

---

**2.** McCann retired in 1992, under the plan for appointed and elected officials, with his pension calculated at the increased rate under the ordinance of 2.5% of his final salary for each year served. If Schaeffer were successful in voiding the ordinance, McCann's retirement benefits would be reduced by approximately $8,175.00 per year.

county council must publish "the title or a summary of all laws and ordinances proposed once a week for two consecutive weeks prior to enactment followed by publication once after enactment in at least one newspaper of general circulation in the county, so that the taxpayers and citizens may have notice thereof." The County Council published the first notice in *The Capital* on May 8, 1989. That notice contained an error in the positioning of the bill number, which was printed on the wrong line above the title and summary of the Bill. The notice was republished in proper form on May 10, 1989, and on May 15, 1989, the final notice was published in the same paper. On the evening of May 15, 1989, the Council passed the proposed legislation, and the County Executive signed the bill into law on May 17, 1989. The enacted ordinance was advertised as required by Article XI–A, § 3 in *The Capital* on June 9, 1989.

Schaeffer argues that, because there was an error in the first notice, proper notice was given only five days prior to enactment. Even assuming that the May 8 notice was legally sufficient, he asserts that the County published notice less than fourteen days before enactment of the ordinance.

The County responds first that the May 8 notice was indeed effective and, second, that the County did comply with Art. XI–A, § 3, because that section requires publication a set number of times, not for a particular duration. If, however, strict compliance is not found, the County contends that it substantially complied with the purpose of Art. XI–A, § 3 and gave sufficient notice. In addition, the County asserts that Schaeffer's claims are barred by laches.

McCann also contends that laches bars Schaeffer's action, as the complaint was filed more than four years after the enactment of the ordinance, and McCann and others relied in good faith on the benefits conferred by the ordinance. He points out that Schaeffer is not attacking the power of the County to adopt an ordinance such as that at issue here but is merely raising a defect in the enactment procedure. Pointing to numerous authorities from other jurisdictions, McCann urges

us to distinguish procedural challenges for laches purposes. Further, McCann asserts that benefits have accrued to and vested in McCann and other beneficiaries under the ordinance and that, under the Contracts Clause of the U.S. Constitution, the legislation may not be voided retroactively.

Schaeffer responds to the laches argument by asserting that it does not apply when a plaintiff disputes the constitutionality of an ordinance. In effect, he contends that this ordinance is susceptible to attack at any time, without regard to laches.

## III

As a threshold matter, we disagree with Schaeffer's assertion that laches does not apply here. The challenge in this case must be distinguished from a claim that the municipality had no power to enact an ordinance or that the ordinance is intrinsically void. Schaeffer contends that the ordinance is void due merely to a procedural defect in its enactment, with no substantive objection to its validity, but adopting such a position would put all ordinances at risk of procedural challenges decades after enactment. At the latest, Schaeffer had constructive knowledge of any defect in enactment procedures when the notice of enactment was published on June 9, 1989. We cannot allow plaintiffs to take a "wait and see" approach to ordinances, challenging an ordinance many years after enactment on procedural grounds. Laches remains applicable when a challenge to enactment procedures is involved with no substantive objection. *See, e.g., Citizens for Responsible Gov't v. Kitsap County,* 52 Wash.App. 236, 239, 758 P.2d 1009, 1011 (1988) ("an ordinance that is clearly a usurpation of power ... can be attacked at any time ... However, defects and irregularities in the mode of enactment of an ordinance do not pertain to the nature of the ordinance itself.... [C]hallenges to such defects may be precluded by ... laches."); *Benequit v. Borough of Monmouth Beach,* 125 N.J.L. 65, 68, 13 A.2d 847, 849 (1940) ("Assuming that the ordinance was not published in a qualified newspaper, such

irregularity was merely procedural and the prosecutrix ... was guilty of laches which bars her right to complain.").[3]

■ Choosing the applicable measure of impermissible delay for cases where an equitable remedy is sought is most straightforward in cases when there are concurrent legal and equitable remedies and the applicable statute of limitations for the legal remedy is equally applicable to the equitable one. *See Rettaliata v. Sullivan*, 208 Md. 617, 621, 119 A.2d 420, 422 (1956); *Dugan v. Gittings*, 3 Gill 138, 161–62 (1845).

■ Schaeffer's cause of action finds its origin in *Baltimore v. Gill*, 31 Md. 375 (1869), where we held that a taxpayer may bring an action *in equity* to enjoin an illegal or ultra vires act by a municipality or other political unit which would result in the expenditure of public funds. *Id.* at 395. The damage sustained by the taxpayer is the potential increase in the amount of taxes to be paid by reason of the municipal acts. *See Baltimore v. Employers' Assoc. of Md.*, 162 Md. 124, 131, 159 A. 267, 270 (1932). In most cases involving an exclusively equitable remedy, we refer to the limitations period for the cause of action at law most analogous to the one in equity.

"The authorities indicate that even when the remedy for a claimed right is only in equity, the period of limitations most nearly apposite at law will be invoked by an equity court, provided there is not present a more compelling equitable reason—such as fraud or other inequitable conduct which would cause injustice if the bar were interposed—why the action should not be barred."

*Stevens v. Bennett*, 234 Md. 348, 351, 199 A.2d 221, 223–24 (1964) (citations omitted). *See also Hall v. Barlow Corp.*, 255

---

3. Several jurisdictions have applied laches to defeat a taxpayer suit in cases where the only objection to the acts of the municipality was, as here, a matter of procedure. *See, e.g., Price v. Sixth Dist. Agric. Ass'n*, 201 Cal. 502, 258 P. 387 (1927); *Smith v. Daffin*, 115 Fla. 418, 155 So. 658 (1934); *Edel v. Filer Township, Manistee County*, 49 Mich.App. 210, 211 N.W.2d 547 (1973); *Fielding v. Board of Educ. of Paterson*, 76 N.J.Super. 50, 183 A.2d 767 (1962); *Schulz v. State of N.Y.*, 193 A.D.2d 171, 606 N.Y.S.2d 916 (1993).

Md. 28, 255 A.2d 873 (1969); *Desser v. Woods,* 266 Md. 696, 296 A.2d 586 (1972); *Bowie v. Ford,* 269 Md. 111, 304 A.2d 803 (1973). Generally, if there is no action at law directly analogous to the action in equity, the three-year statute of limitations found in Maryland Code (1974, 1989 Repl.Vol., 1994 Cum.Supp.), § 5–101 of the Courts and Judicial Proceedings Article will be used as a guideline. *See Washington Suburban Sanitary Comm'n v. C.I. Mitchell & Best Co.,* 303 Md. 544, 562, 495 A.2d 30, 39 (1985).

We explained this principle in *Washington Suburban,* a case in which developers brought an action seeking declaratory and injunctive relief against the collection of a "System Expansion Offset Charge" ("SEOC") imposed by the Washington Suburban Sanitary Commission ("WSSC"). The developers contended that the WSSC lacked the authority to adopt the new charge and, in the alternative, that even if the WSSC had such authority, the charge as adopted was unreasonable and void. We held that the suit would not be barred by laches when the statute of limitations applicable to legal actions was analogized:

"SEOC was first adopted June 13, 1979, to be effective July 1 of that year. Plaintiffs brought this suit on September 17, 1981. On analogy to the general three-year statute of limitations applicable to actions at law, laches does not apply here. *See Desser v. Woods,* 266 Md. 696, 704, 296 A.2d 586, 591 (1972)."

*Id.* at 562, 495 A.2d at 39.

The WSSC had briefed the laches argument, and proposed that the analogy be drawn instead to the thirty-day limit for appealing certain actions of the WSSC to the Maryland Public Service Commission. We rejected that argument on the basis that the WSSC's authority to adopt the SEOC was not subject to the jurisdiction of the Public Service Commission, and concluded that the correct analogy was to the general statute of limitations:

"Where, as here, the claim under consideration properly invokes the original jurisdiction of the circuit court, the

analogy for laches should not be to a time limit for initiating a special statutory administrative remedy applicable to a different theory of the case.

"[A]nalogy is properly made to the three-year statute ..." *Id.* at 563, 495 A.2d at 39. *See also Payne v. Prince George's County Dep't of Social Servs.,* 67 Md.App. 327, 507 A.2d 641 (1986).

As Schaeffer's claim is not analogous to an action at law with a special statute of limitations, we shall use the general three-year statute of limitations applicable to actions at law. The circuit court found that the latest possible date of accrual for this action was June 9, 1989, the date of publication of the ordinance after enactment. Schaeffer's claim was filed more than three years after that date and the trial court ruled that laches barred that equitable action.

Furthermore, unlike the defense of limitations in an action seeking a legal remedy, the defense of laches to the assertion of an equitable remedy must be evaluated on a case by case basis, as laches is an *inexcusable* delay, without necessary reference to duration in asserting an equitable claim. *See Sinclair v. Weber,* 204 Md. 324, 337, 104 A.2d 561, 567 (1954); *Connelly v. Connelly,* 190 Md. 79, 84, 57 A.2d 276, 278 (1948); *Kaliopulus v. Lumm,* 155 Md. 30, 38–39, 141 A. 440, 444 (1928); *Boggs v. Dundalk Realty Co.,* 132 Md. 476, 481, 104 A. 45, 47 (1918); *Lawson v. Mullinix,* 104 Md. 156, 170–71, 64 A. 938, 944 (1906); *Sinclair v. Auxiliary Realty Co.,* 99 Md. 223, 234, 57 A. 664, 668 (1904); *Hagerty v. Mann,* 56 Md. 522, 525–26 (1881). Moreover, even where such impermissible delay is present under the circumstances presented, if the delay has not prejudiced the party asserting the defense, it will not bar the equitable action. *Lipsitz v. Parr,* 164 Md. 222, 226–27, 164 A. 743, 745 (1933); *Demuth v. Old Town Bank,* 85 Md. 315, 326–27, 37 A. 266, 268–69 (1897). The instant case well illustrates the prejudice component of the laches defense.

The ordinance in question increased the benefit accrual rate for all participants in the basic Employee's Retirement Plan

and for county officials in the Retirement Plan for Appointed and Elected Officials who retired on or after July 1, 1989. Loss of the increase in the benefit accrual rate enacted by the ordinance would result in a reduction in McCann's annual pension benefit of approximately 17%.

All participants in either pension plan who were hired, retired or who continued employment since July, 1989, in reliance on the modifications to the plan effected by the ordinance, were also prejudiced by appellant's delay in bringing his claim. We agree with the analysis of the Circuit Court:

> "Plaintiff has slept on his rights, and during his torpor, the Intervenor and others similarly situated derived pension benefits which have accrued, become fully vested, paid to them, and which cannot now be diminished. In addition, Bill 36–89 covers many other county employees under their basic Employee Retirement Plan. The voiding of the Bill would have a catastrophic effect on hundreds of county employees who have relied on it while the Plaintiff said nothing. He is truly a 'Johnny (Robert) Come Lately,' and therefore, again, Plaintiff is not entitled to relief."

This case exemplifies exactly the type of potential prejudice that laches is designed to prevent. In such a situation, plaintiff's claim may be barred even prior to the expiration of the limitations period, because of the extreme prejudice to the beneficiaries of the retirement plans if the claim were permitted to proceed.

## IV

■ Although our decision today rests upon laches, we make some observations with regard to the proper construction of the notice requirement contained in Md. Const. Art. XI–A, § 3. Art. XI–A, § 2 vests the law-making power of a charter county in its county council, and imposes certain conditions on the exercise of that power. One of these conditions is found in Art. XI–A, § 3:

"[T]he title or a summary of all laws and ordinances proposed shall be published once a week for two successive weeks prior to enactment followed by publication once after enactment in at least one newspaper of general circulation in the county, so that the taxpayers and citizens may have notice thereof."

There has been much debate in this case concerning the proper construction of the words "once a week for two successive weeks prior to enactment." Schaeffer asserts that those words mandate two publications during the fourteen-day period prior to enactment, with the first being no later than fourteen days prior to enactment. Appellees contend that those words require publication on two separate days, once in each of two successive *calendar* weeks, with the final notice published any time prior to the vote by the County Council approving the ordinance. Appellees' construction would permit both notices to be published within the two days prior to enactment (assuming first publication on a Saturday, second publication on Monday, and enactment later on Monday), while Appellant's construction requires the passage of fourteen days after the first publication prior to enactment.

We have construed language identical to that at issue in the instant case contained in statutes mandating public notice of certain actions. In *Koch v. Mack International Motor Truck Corp.*, 201 Md. 562, 95 A.2d 105 (1953), we construed a Baltimore City notice requirement that "the time, place and terms of said sale [of abandoned vehicles] . . . shall be inserted in one or more daily newspapers published in Baltimore City at least once each week for two successive weeks prior to said sale." The advertisement in *Koch* appeared in a daily newspaper on October 28, 1951, and on November 5, 1951. The vehicle at issue was sold on November 5, 1951, only eight days after the first publication. In finding such notice inadequate, we relied on the reasoning of the 8th Circuit in *Wilson v. Northwestern Mutual Life Ins. Co.*, 65 F. 38, 38–39 (1894):

" 'A week is seven days. The first publication of this notice was November 10th; its publication for one week, or seven days, could not have been, and was not, complete until 12

o'clock p.m., or midnight, November 16th; ... its publication for four weeks was not complete until 12 o'clock p.m., or midnight, of December 7, 1893, but the sale was made at 2 o'clock in the afternoon of that day.... Our conclusion is that the publication of a notice of sale once a week for only 27 days before the day of sale is not a 'previous publication' of such a notice 'once a week for at least four weeks prior to such sale,' * * *.' *Black's Law Dictionary* defines prior as 'the former; earlier; preceding.'"

*Koch,* 201 Md. at 569, 95 A.2d at 108–09. We also quoted *Merrill on Notice,* § 665 in determining the proper interpretation of "publication for two successive weeks:"

" 'Questions arise concerning specifications that publication shall be 'for' a certain number of weeks before an event. A week in this sense means seven days and *the prescription can be satisfied only by publication starting the specified multiple of seven days prior to the effective date.* However, if the several publications are to be once a week for a specified number of weeks, *the spacing need not be exactly seven days apart, provided there is one appearance in each period of seven days and the proper number of hebdomads intervenes between the initial publication and the effective date.'"

*Koch,* 201 Md. at 569–70, 95 A.2d at 109 (emphasis added) (citations omitted). *See also Bacon v. Kennedy,* 56 Mich. 329, 22 N.W. 824 (1885) ("The only question in this case is whether a statutory foreclosure is valid where the sale was made on a notice which, although published twelve times in separate weeks, provided for selling on a day less than twelve weeks from the first publication. The statute does not say that notice shall merely be published twelve times, once a week, but once a week 'for twelve successive weeks.' The object of this was manifestly to give that full interval between the first notice and the sale.")

In *Winter v. O'Neill,* 155 Md. 624, 142 A. 263 (1928), we addressed whether the day on which action was taken is to be included in the computation of the required notice period. In

that case, publication had occurred on November 16, 1915, and the day of sale was December 14, 1915. The statute in question required that the tax collector give notice of the tax sale by publication "once a week for four successive weeks," and we set forth the method of calculating the proper time:

"[I]n the computation of time, where there is no language indicating that the notice shall be so much clear time, or at least so many days, weeks or months, *the rule is not to include or exclude both the day of first publication and the day of sale, but to include one and exclude the other.* Applying this general rule to the case before us, we find that, if the day of the first publication or the day of sale either is excluded, and the other included, there will remain twenty-eight days' or four weeks' notice, which is all that the statute requires."

*Id.* at 635, 142 A. at 268 (emphasis added). *See also Walsh, Trustee v. Boyle,* 30 Md. 262, 267 (1869) ("where any particular number of days not expressed to be *clear days,* is prescribed, the rule in regard to the computation of time, is not to *exclude both the day on which the notice* is served, *and the day on which the act is to be performed,* but to *exclude* the *one* and *include* the other."). Although it is not clear from these cases which of the two terminal days is to be excluded, it is clear that both days are not to be included.

In 1972, the scope of Art. XI–A, § 3 was broadened to require pre-enactment notice in addition to post-enactment notice. The Legislature, in proposing that amendment to our constitution, is presumed to have had knowledge of our cases that had been decided prior to that time, *Harris v. State,* 331 Md. 137, 626 A.2d 946 (1993), and those cases clearly stated that fourteen days' notice was necessary under the language used to describe the required notice. In addition, the Legislature had enacted Md.Code (1957), Art. 94, § 2 in 1943,[4] which

---

4. Md.Code (1957), Art. 94, § 2 provides:

"In computing any period of time prescribed or allowed by any applicable statute, the day of the act, event, or default, after which the designated period of time begins to run is not to be included. The

provided for the computation of time in notice statutes and codified our approach in *Winter v. O'Neill, supra.* Although the time statute is not directly applicable in this case, it does evidence the Legislature's knowledge of our decisions regarding the proper method of calculating notice periods.

Since we affirm the decision of the Circuit Court for Anne Arundel County because Appellant was guilty of laches in pursuing his claim, we need not address the federal constitutional issue raised by McCann.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

last day of the period so computed is to be included unless: (1) It is a Sunday or a legal holiday, in which event the period runs until the end of the next day, which is neither a Sunday or a holiday; or, (2) the act to be done is the filing of some paper in court and the office of the clerk of said court on said last day of the period is not open, or is closed for a part of a day, in which event, the period runs until the end of the next day which is neither a Sunday, Saturday, a legal holiday, or a day on which the said office is not open the entire day during ordinary business hours. When the period of time allowed is more than seven days, intermediate Sundays and holidays shall be considered as other days; but if the period of time allowed is seven days or less, intermediate Sundays and holidays shall not be counted in computing the period of time."