864 A.2d 279

Arthur HYDER, et al.

v.

MONTGOMERY COUNTY, Maryland, et al.

No. 02354, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Dec. 30, 2004.

Stuart H. Grozbean (Beli, Weil & Grozbean, PC, on brief), Rockville, for appellant.

Karen L. Federman Henry (Charles W. Thompson, Jr., County Atty., on brief), for appellee.

Panel HOLLANDER, ADKINS, MEREDITH, JJ.

MEREDITH, J.

This case involves a dispute regarding the number of days of notice that must be given by a tenant who seeks to terminate a lease. More specifically, the question is: what is the deadline for a tenant's notice when the lease requires "thirty (30) days' written notice of termination prior to the Rent Due Date"? The Commission on Landlord–Tenant Affairs for Montgomery County ruled that the tenants in this case had given timely notice of termination by delivering to the landlord on April 1 a notice that the tenants intended to terminate the tenancy as of April 30. The Circuit Court for Montgomery County affirmed that conclusion. So shall we.

The tenants in this case rented a residential property from a landlord in Montgomery County, utilizing a preprinted form lease published by the Greater Capital Area Association of REALTORS®, Inc. The form, captioned "Single Family Dwelling Lease," is widely used in Montgomery County.

After the initial twelve-month term of the lease came to an end on June 30, 2001, the tenants continued in residence pursuant to an express agreement to extend the term on a month-to-month basis, at an increased monthly rental rate but otherwise subject to all other provisions of the lease. On April 1, 2002, the tenants delivered to the landlord notice that the tenants intended to terminate the lease as of April 30, 2002. The landlord responded that the notice was given too late to avoid liability for rent for the month of May. Pointing to the language of the lease that required the party desiring to terminate the month-to-month tenancy to give "thirty (30) days' written notice of termination prior to the Rent Due Date," the landlord took the position that the April 1 notice of termination was not given in sufficient time to permit an April 30 termination. Accordingly, the landlord advised the tenants that they would be liable for rent through May 31 unless the unit was rented to a replacement tenant.

The tenants nevertheless vacated the property on April 29, and refused to pay the rent that would have been due on May 1. When the landlord subsequently deducted from the tenants'

security deposit an amount to cover rent for May, and a late fee on that rent, the tenants filed a complaint with the Commission on Landlord–Tenant Affairs for Montgomery County. The Commission conducted a hearing pursuant to Montgomery County Code (2001), §§ 29–10, 29–14, 29–41, and 29–44. After the Commission conducted its hearing, it concluded (1) that the tenants had properly served timely notice of their intent to vacate on April 30, and (2) that the landlord was not entitled to withhold May's rent (and late fees thereon) from the tenants' security deposit. The Commission found that the landlord had not acted in bad faith, however, and refused to award the tenants penalty damages, pursuant to Maryland Code (1974, 2003 Repl.Vol.), Real Property Article, § 8–203(e)(4), beyond the amount the Commission determined had been wrongfully withheld. The Commission stated:

Paragraph 22a of the Lease, entitled "Termination— Hold Over," states that either party can terminate the Lease at the expiration of the Lease "by giving the other thirty (30) days' written notice of termination prior to the Rent Due Date." Pursuant to this Lease provision, in order to terminate their month-to-month tenancy at the end of April 2002, Complainants [tenants] were required to provide Respondents' Agent [landlord's agent] written notice thirty (30) days before the Rent Due Date of May 1, 2002. Therefore, because thirty (30) days before May 1, 2002 was April 1, 2002, the Complainants served Respondents' Agent with a proper written notice on April 1, 2002 of their intention to vacate the Property as of April 30, 2002.

... Based on the Complainants having provided Respondents' Agent with a proper notice to vacate, the Complainants' tenancy and obligation to pay rent ceased as of April 30, 2002, and Respondents are not entitled to charge against Complainants' security deposit $2,200.00 rent for May of 2002, or $110.00 for a late fee for May 2002.

The landlord filed a timely petition in the Circuit Court for Montgomery County seeking judicial review of the Commission's ruling. We shall affirm the circuit court's judgment that affirmed the ruling of the Commission.

### Standard of Review

The Court of Appeals has recently summarized the principles governing our role in reviewing an administrative agency's decision as follows:

We review an administrative agency's decision under the same statutory standards as the Circuit Court. Therefore, we reevaluate the decision of the agency, not the decision of the lower court. Moreover, in *United Parcel Service, Inc. v. People's Counsel for Baltimore County*, 336 Md. 569, [576–77,] 650 A.2d 226, [230] (1994), we stated generally that "[j]udicial review of administrative agency action is narrow. The court's task on review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency."

We expounded upon this doctrine in *Board of Physician [Quality Assurance] v. Banks*, 354 Md. 59, 729 A.2d 376 (1999):

Despite some unfortunate language that has crept into a few of our opinions, a "court's task in review is *not* to [']substitute its judgment for the expertise of those persons who constitute the administrative agency.[']" . . .
Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the [statute] which the agency administers should ordinarily be given considerable weight by reviewing courts. . . . Furthermore, the expertise of the agency in its own field should be respected.[ ]

*Banks*, 354 Md. at 68–69, 729 A.2d at 381.

"We, however, 'may always determine whether the administrative agency made an error of law. Therefore, ordinarily the court reviewing a final decision of an administrative agency shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision.' " *Balt. Lutheran High Sch. v. Employment Sec. Admin.*, 302 Md. 649, 662, 490

A.2d 701, 708 (1985). Regarding the substantial evidence test, we explained in *Baltimore Lutheran High School:*

> That is to say, a reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the final decisions of an administrative agency, but it must not itself make independent findings of fact or substitute its judgment for that of the agency.

*Balt. Lutheran High Sch.,* 302 Md. at 662, 490 A.2d at 708. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In *Baltimore Lutheran High Sch[ool]*, we further explained:

> The scope of review is limited to whether a reasoning mind could have reached the factual conclusion the agency reached. In applying the substantial evidence test, the reviewing court should not substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken. The reviewing court also must review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity. Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.

*Balt. Lutheran High Sch.,* 302 Md. at 662–63, 490 A.2d at 708 (citing *Bulluck [v. Pelham Wood Apartments]*, 283 Md. [505,] 512, 390 A.2d [1119,] 1123 [(1978)] )[(emphasis in original) . . . ].["]

*Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.,* 369 Md. 439, 449–52, 800 A.2d 768 (2002) (quoting *Gigeous v. E. Corr. Inst.,* 363 Md. 481, 495–97, 769 A.2d 912, 921–22 (2001) (footnote omitted)) (some citations omitted) (omissions in original).

*Annapolis Market v. Parker,* 369 Md. 689, 703–04, 802 A.2d 1029 (2002). With these principles in mind, we will review the decision of the Commission.

## *Notice of Termination*

■ The common law rules regarding the notice that was required to terminate a periodic tenancy were summarized by Professor Tiffany as follows:

> The ordinary mode in which such a tenancy comes to an end is by reason of a notice given by one party to the other to the effect that he desires to terminate the tenancy.

> The English rule, that a notice of half a year is necessary in order to terminate a tenancy from year to year, has ordinarily been adopted in this country, in the absence of a statutory provision on the subject. In a number of the states the length of the notice is fixed by statutory enactment, it varying from one to six months.

> In the case of a tenancy from quarter to quarter, month to month, or week to week, a notice of a quarter, a month, or a week, respectively, is ordinarily regarded as necessary to terminate it. In a number of states the length of the notice necessary in such cases is prescribed by statute, the statute occasionally referring in terms to a tenancy from quarter to quarter, month to month, or week to week, and sometimes being so framed as to apply to any periodic tenancy, or to any such tenancy measured by periods less than a year.

> The obligation to give notice is, at common law, reciprocal, the tenant being bound to give it, as well as the landlord, if he desires to terminate the tenancy. The statutes above referred to likewise ordinarily require notice to be given by the tenant as well as by the landlord.

> The common-law rule, in regard to the length of notice necessary to terminate a periodic tenancy, may be superseded by an express agreement in this regard, and a statutory provision on the subject would no doubt likewise yield to any contract between the parties.

1 HERBERT T. TIFFANY, LAW OF REAL PROPERTY, § 173 (3d ed.1939)(footnotes omitted).

As Professor Tiffany pointed out, the common law rule would be superseded by an express agreement between the parties. In the present case, there was an express written agreement regarding the required period of notice. Consequently, the outcome of this case is governed by principles of contract interpretation rather than the common law rules pertaining to a notice to quit.

The result is not affected by Maryland Code (1974, 2003 Repl. Vol.), Real Property Article ("R.P."), § 8–402(b), which requires a landlord who wishes to take advantage of the statutory remedy of summary repossession to "give notice in writing one month before the expiration of the term." *See Darling Shops v. Balto. Center,* 191 Md. 289, 297–98, 60 A.2d 669 (1948) (" 'A notice *intended to determine the tenancy* should not be confounded with a notice which *entitles the landlord to repossess* himself of the premises by a *summary remedy.* This last is entirely the creature of statute law.' " (Emphasis in original.)). Nor do other statutory provisions addressing a notice of termination control the disposition of this case. *See* R.P. § 8–208(d)(5), prohibiting a landlord from using a lease that purports to allow the landlord to give a notice to quit which is a shorter period than that provided by applicable law; and R.P. § 8–501, prohibiting a written agreement that requires the tenant to provide a longer period of notice of termination than the agreement requires of the landlord.

The specific portion of the lease agreement that gave rise to the present dispute is the following language found in Section 22.a., a section captioned "Termination—Hold Over," which reads as follows:

Either Landlord/Agent or Tenant may terminate this Lease at the expiration of said Lease or any extension thereof by giving the other thirty (30) days' written notice of termination prior to the Rent Due Date. If Tenant holds over after the expiration of the term of this Lease, he shall, with

the Landlord/Agent's consent and in the absence of any written agreement to the contrary, become a Tenant from month to month at the monthly rate in effect during the last month of the expiring term. All other terms and provision [sic] of this Lease shall remain in full force and effect.

The term "Rent Due Date" is defined in the first paragraph of the lease form in the following manner:

[T]he Landlord hereby leases to the Tenant and the Tenant hereby leases from the Landlord, premises known as _____ ..., at a total rent of _____ Dollars ... payable in equal monthly installments of _____ Dollars ($ _____) in advance on the first day of each and every month ("Rent Due Date") of said term.

The landlord does not argue that the language of the lease is ambiguous. Rather, the landlord argues that "[t]he plain meaning of the language used by the parties indicates that they intended to require notice of termination to be given prior to the first day of the last month of the tenant's term of occupancy." (Italics omitted.) To reach this conclusion, the landlord argues that there are two separate requirements for a timely notice: (1) it must provide 30 days' notice of termination, *and* (2) it must be given "prior to the Rent Due Date." The landlord contends the tenants were required to give their notice *prior* to the Rent Due Date of the final month of the tenancy. Accordingly, the landlord argues that, if the tenants wished to terminate at the end of April, the tenants were required to give notice of such intent before the Rent Due Date for April (*i.e.,* before April 1).

The landlord contends that the relevant Rent Due Date was necessarily April 1 because that was the final Rent Due Date under the month-to-month term of the lease. The landlord's argument, however, ignores the fact that the first day of each month was a Rent Due Date until the time either party gave notice of termination. Until the tenants delivered their timely notice of termination, May 1 *was* a Rent Due Date under the terms of the subject lease. Consequently, the notice delivered

on April 1 *was* delivered: (a) 30 days prior to termination, and (b) 30 days prior to the next Rent Due Date.

Because of the standard method of counting days for performance in Maryland, which we discuss more fully below, the landlord's position would render the "thirty days" language in Section 22.a. of the lease surplusage for every month except February. Under the landlord's interpretation, to terminate at the end of a 30–day month such as April, the tenants would have to give at least 31 days' notice; to terminate at the end of a 31–day month such as May, the tenants would have to give at least 32 days' notice. We do not agree that the "plain meaning" of the language used by the parties in the lease form could rationally support such a conclusion.

The Court of Appeals reviewed the principles governing interpretation of contracts in *Atlantic Contracting & Material Company, Inc. v. Ulico Casualty Company*, 380 Md. 285, 844 A.2d 460 (2004), and summarized a number of the rules as follows:

> "The interpretation of a written contract is ordinarily a question of law for the court and, therefore, is subject to *de novo* review by an appellate court." *Wells v. Chevy Chase Bank*, 363 Md. 232, 250, 768 A.2d 620, 629–30 (2001) (citations omitted). In determining the meaning of contractual language, Maryland courts apply the principle of the objective interpretation of contracts. *Sy–Lene of Washington, Inc. v. Starwood Urban Retail II, LLC.*, 376 Md. 157, 166, 829 A.2d 540, 546 (2003), and cases there cited. Applying objective interpretation principles, the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean. [*Auction Reps. v.] Ashton*, 354 Md. [333,] 340, 731 A.2d [441,] 444 [(1999)]; *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298, 304 (1996). Our primary consideration, when interpreting a contract's terms, is the "customary, ordinary, and accepted meaning" of the language used. *Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 324 Md. 44, 56–57, 595 A.2d 469, 475 (1991) (citations omitted). The terms of the contract must be interpreted in

context, and given their ordinary and usual meaning. *Langston v. Langston,* 366 Md. 490, 506, 784 A.2d 1086, 1095 (2001).

380 Md. at 300–01, 844 A.2d 460. *Accord, Sy–Lene of Washington, Inc. v. Starwood Urban Retail, II, LLC,* 376 Md. 157, 166–67, 829 A.2d 540 (2003); *DIRECTV, Inc. v. Mattingly,* 376 Md. 302, 312–13, 829 A.2d 626 (2003); *Calomiris v. Woods,* 353 Md. 425, 434–36, 727 A.2d 358 (1999).

Applying the ordinary meaning of the words used in the subject lease form, we conclude that the notice of termination must be given 30 days prior to the Rent Due Date that the tenant wishes to avoid-in this case, 30 days prior to May 1, 2002. Counting back 30 days prior to May 1, we conclude that the deadline for the tenants' notice was April 1, the date on which the notice was delivered.

The general rule for counting the days for performance of an act in other contexts was reviewed by the Court of Appeals in *Schaeffer v. Anne Arundel County,* 338 Md. 75, 656 A.2d 751 (1995). The Court stated:

> In *Winter v. O'Neill,* 155 Md. 624, 142 A. 263 (1928), we addressed whether the day on which action was taken is to be included in the computation of the required notice period. In that case, . . . we set forth the method of calculating the proper time: "[I]n the computation of time, where there is no language indicating that the notice shall be so much clear time, or at least so many days, weeks or months, *the rule is not to include or exclude both the day of first publication and the day of sale, but to include one and exclude the other.* . . ." *Id.* at 635, 142 A. at 268 (emphasis added). *See also Walsh v. Boyle,* 30 Md. 262, 267 (1869) ("[But we take the law to be well settled, however, in matters of practice,] where any particular number of days not expressed to be *clear days,* is prescribed, the rule in regard to the computation of time, is not to *exclude both the day on which the notice* is served, *and the day on which the act is to be performed,* but to *exclude* the *one* and *include* the other." [Emphasis in

original.]). Although it is not clear from these cases which of the two terminal days is to be excluded, it is clear that both days are not to be included.

338 Md. at 86–87, 656 A.2d 751.

A similar statement of the "general rule" is found in an annotation on the subject, J. Bock, Annotation, *Inclusion or Exclusion of First and Last Days in Computing the Time for Performance of an Act or Event Which Must Take Place a Certain Number of Days Before a Known Future Date*, 98 A.L.R.2d 1331, 1338 § 3[a] (1964):

> In the absence of anything showing an intention to count only "clear" or "entire" days, it is generally held that in computing the time for performance of an act or event which must take place a certain number of days before a known future day, one of the terminal days is included in the count and the other is excluded.

In *Parker v. Brattan*, 120 Md. 428, 433, 87 A. 756 (1913), the Court of Appeals quoted with approval a statement made in *Sheets v. Seldon*, 2 Wall. 177, 69 U.S. 177, 190, 17 L.Ed. 822, 826–27 (1864), a case in which the Supreme Court said that the general rule "on the interpretation of contracts ... where time is to be computed from a particular day of a particular event, as when an act is to be performed within a specified period from or after a day named, is to exclude the day thus designated, and to include the last day of the specified period." *See also Beckenheimer's Inc. v. Alameda Associates Limited Partnership*, 327 Md. 536, 541, 611 A.2d 105 (1992) (May 4 was deadline for giving notice of renewal 120 days prior to expiration of lease that ended on August 31).

The Court of Appeals has adopted a similar rule for computing deadlines in court proceedings. Maryland Rule 1–203(b) provides:

> **(b) Computation of Time Before a Day, Act, or Event.** In determining the latest day for performance of an act which is required by these rules, by rule or order of court, or by any applicable statute, to be performed a prescribed number of days before a certain day, act, or event, all days

prior thereto, including intervening Saturdays, Sundays, and holidays, are counted in the number of days so prescribed. . . .

*See also* Maryland Rule 6–106 (pertaining to the settlement of decedents' estates, and providing: "Any period of time prescribed by rule, order of court, or any applicable statute shall be computed in accordance with Rule 1–203.").

In MARYLAND RULES COMMENTARY, the commentators provide the following concrete example of applying Rule 1–203 to determine the deadline for giving notice prior to an event:

Whenever these rules or a statute require action within a certain time period before an act or event, such as giving 10 days' notice before the day of a deposition . . . or filing a pleading within a certain time period before trial . . . [,] [c]ounting on the calendar is done backwards from the date of the event. . . . The date or event from which the counting is done is excluded, and the final date of the period (counting backwards) is included. For example, if a pleading must be filed 15 days before trial and the trial date is April 21, counting backwards on the calendar, day one of the 15–day counting period is April 20. The fifteenth day falls on April 6, and the pleader has until the end of that day to file the paper. . . .

PAUL V. NIEMEYER, LINDA M. SCHUETT, JOHN A. LYNCH, JR. & RICHARD W. BOURNE, MARYLAND RULES COMMENTARY 21 (3d ed.2003).

In *Schaeffer, supra,* 338 Md. 75, 656 A.2d 751, the Court also made reference to the General Assembly's adoption of a similar provision for computing days. Referring to Maryland Code (1957, 2003 Repl.Vol.), Article 94, § 2 (which was transferred in 1997 to Article 1, § 36), the Court suggested that the legislature's enactment of a similar method for counting days was indicative of the legislature's concurrence with the cases on this subject. The Court stated:

[T]he Legislature [has] enacted Md.Code (1957), Art. 94, § 2 in 1943, which provided for the computation of time in notice statutes and codified our approach in *Winter v. O'Neill,*

*supra.* Although the time statute is not directly applicable in this case, it does evidence the Legislature's knowledge of our decisions regarding the proper method of calculating notice periods.

*Id.* at 87–88, 656 A.2d 751 (footnote omitted).

■ We hold that in the absence of any language in the lease providing for a different method of counting days, the method prescribed by the above rules and statute should be employed. Although there are only 29 clear days *between* April 1 and May 1, the lease did not specify that there had to be 30 clear days between the giving of the notice and the Rent Due Date. Here, the tenants who wished to terminate their lease before incurring an obligation to pay rent for May were required to give thirty days' notice prior to the Rent Due Date of May 1, 2002. If we exclude May 1 and count backwards on the calendar 30 days, the 30th day falls on April 1, 2002, and the tenants had until the end of that day to deliver their notice of termination to the landlord. As the Commission found, pursuant to the notice of termination delivered to the landlord on April 1, 2002, the tenants' obligation for rent terminated on April 30, 2002. The Commission's conclusion that the tenants gave timely notice of their intent to terminate as of April 30 was supported by substantial evidence and was not based upon an erroneous legal conclusion. We affirm the Commission's ruling.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**